No. 19.—N. Owsley & Son, plaintiffs in error, *vs.* Philip Woolhopter, defendant.

[1.] The plaintiff, declaring as A. B., *Agent*, sues in his own right; and the term *agent*, is an addition to the name only, and descriptive of the person.

[2.] The affidavit, in cases of garnishment, need not set forth the name of the persons against whom the summons is to issue.

[3.] It is not competent for a witness to testify to the indebtedness of the defendant to the plaintiff, when it appears that he derives his knowledge of the fact entirely from an account rendered him, from the books of a third person. His evidence is hearsay only; and the books themselves, properly authenticated, or a transcript from them, is the higher and better proof.

[4.] The ratification of the unauthorized act of the Agent, may be implied, under certain circumstances, from the silence of the principal.

[5.] If one in the presence of the principal, sell a parcel of goods of the latter, as his agent, without objection, the tacit consent of the principal, will be presumed, and it will bind him.

[6.] If the agent, without authority, do an act, and the principal, after a knowledge of the fact, makes no objection, but acquiesces for a length of time, and such acquiescence cannot be explained or otherwise accounted for, and which has a tendency to mislead the agent, the law will construe such silence as contrary to the duty of the principal; and hold him bound by it.

[7.] A., a factor in Savannah transacts business with B., a house in New York, to the amount of $370,000, on which a loss was sustained, on cotton alone, of some $15,000. A., as the agent of C., shipped C's cotton to B., and this constituted an item in the aggregate of business done, as well as of loss sustained. On account of his large and liberal dealings, B. compromises with A., at one fourth: *Held*, that C. was entitled to settle with A., upon the same terms, his portion of the loss.

Garnishment, in Bibb Superior Court. Tried before Judge Powers, May Term 1853.

The facts of this case are as follows:

Philip Woolhopter, Agent, had brought an action in Chatham Superior Court, against Mrs. Ruth E. Reid; and had caused Owsley & Son, of Bibb county, to be served with a summons of garnishment, to declare what they were indebted to Mrs. Reid, or what effects of her's they had in possession, &c. The garnishees objected to the affidavit, made to obtain the summons of garnishment; because it was made by Henry

Harper, as agent of Woolhopter, who himself had sued as agent; and consequently, that the affidavit, being made by the agent of an agent, was illegal; and furthermore, that the affidavit did not state against whom summons of garnishment was designed.    Both these objections were overruled by the Court; and the garnishees filed their answer, and said, they did not know what amount they were indebted to Mrs. Reid; that there was an account between them, a part of which they did not admit to be correct; for that a quantity of cotton, which they had consigned to her, for sale in Savannah, she had caused to be shipped to New York, without their authority, and sold at a loss; and that she had compromised the loss with the New York house, at 33½ cents in the dollar, while they were charged with the whole; which liability they did not admit.    This answer was traversed, and the issue submitted to a jury.

It appeared, from the testimony of F. H. Wellman, that he was the agent of Mrs. Reid, in carrying on the commission business in Savannah; and that the business was transacted in the name of F. H. Wellman, Agent; and that Owsley & Son had transacted a large amount of business with him.    That he, as agent, had shipped a quantity of the cotton, consigned to him by Owsley & Son, to the house of E. & R. R. Graves, in New York; that the cotton was sold in 1851, in New York, at a loss; that the business of F. H. Wellman, Agent, with E. & R. R. Graves, amounted, in that year, to 370,000 dollars; that on the whole amount, they had sustained a loss of 16,000 dollars, which, in consideration that he was a large dealer with them, the Graves' had compromised at 25 cents in the dollar; that the cotton of Owsley and Son was a part of the amount shipped.    It appeared further, from Wellman's testimony, that he had shipped the cotton of Owsley & Son to New York, without authority from them to do so; but that, in 1852, about a year after the sale of the cotton, and after Owsley & Son had failed, he had informed one of the firm of the disposition he had made of their cotton; and that he made no objection.    The witness stated that Owsley & Son were indebted to Mrs. Reid, on account, the sum of $6,346 26; and exhibited an account of sales and ad-

vances, showing the balance. On being cross-questioned, it appeared that he obtained his knowledge of the amount of sales from a letter of E. & R. R. Graves. This was objected to as hearsay testimony; but was admitted by the Court.

The Court charged the jury, that a factor has no right to ship the cotton of his employer to a different market without his authority; but that if Owsley & Son were afterwards informed of what had been done, and made no objection, that it amounted to a ratification of the acts of the factor; that they must look to the testimony, and see whether the garnishees in this case, made any objection when so informed; that if not, they were bound by the acts of their factor.

The Court charged, further, that the house of E. & R. R. Graves, of New York, could only look to F. H. Wellman, Agent, for a settlement, and not to Owsley & Son; that Owsley & Son were not liable to them, and consequently could claim no benefit from any compromise made between them and Wellman, as they had no concern in that transaction. The jury found for the plaintiff; and the garnishees except to the said charges and decisions of the Court.

STUBBS & HILL, for plaintiff in error.

POE, NISBET & POE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a proceeding under the Garnishment Law of this State. On the trial, the attorney of the garnishee objected to the affidavit upon which the garnishment issued, upon two grounds: *First*, because it was made by the agent of an agent; and, *Secondly*, because it did not specify against whom process of garnishment was prayed.

[1.] The first objection does not exist in point of fact. It is true, that the action of assumpsit, in Chatham county, which is the foundation of the garnishment, is at the instance of Philip D. Woolhopter, *Agent*, against Ruth E. Reid. But the

N. Owsley & Son *vs.* Philip Woolhopter.

term agent, is an addition only to the name of the plaintiff, and descriptive of his person.

[2.] As to the other defect, that the affidavit does not state against whom summons of garnishment was desired, it is enough to say, that the law does not require that it should; and that in practice, it would be very inconvenient if it did.

[3.] Francis H. Wellman, the father and agent of Mrs. Reid, in the commission business carried on by her in Savannah, being introduced as a witness, testified, that Owsley & Son, the garnishees, are indebted to Ruth E. Reid $6,346 26, being a balance due on cotton transactions between them, in the Fall of 1850, and Winter and Spring of 1851; and exhibited an account of sales and advances, showing said balance. On the cross-examination, it appeared that the witness obtained his knowledge of the sales, from a letter written by E. & R. R. Graves, of New York. Whereupon, his testimony was objected to as hearsay only; but admitted by the Court. And this is the next error assigned on the record.

Conceding that it was competent for the witness to swear positively, provided he would undertake to do so, to the balance of indebtedness, on account of the dealings between Owsley & & Son, and Mrs. Ruth E. Reid; yet, when it was disclosed by the cross-examination, that he derived all his knowledge from the data furnished him by Messrs. E. & R. R. Graves, the commission merchants in New York, who sold the cotton of Owsley & Son, it became evident, from that time, that his testimony was illegal; and it should have been withdrawn from the jury. The books of E. & R. R. Graves, properly authenticated, was the source from which this better proof should have been drawn.

[4.] But the main point in this case, is this, Owsley & Son, the garnishees, drew largely and at sundry times, upon Mrs. Reid or her agent, Wellman, at Savannah. They shipped cotton to Mrs. Reid, or Wellman, her agent, to meet the payment of their drafts. It should have been sold in that market. Mrs. Reid, or her agent, re-shipped three lots of that cotton, to-wit: 64, 84 and 97 bales, without authority, and contrary to the

usages of trade, to Messrs. E. & R. R. Graves, of New York. On this transaction, there was a heavy loss sustained, and just about sufficient to cover the amount of indebtedness against the garnishees. Having, as it is admitted, no previous authority to do this, reliance is had, upon a subsequent ratification of the *New York* sale. Mr. Wellman testifies, that after Owsley & Son had failed, which is proven by Groce, to have been in February or March, 1852, twelve months after the sale of their cotton in New York, that he (the witness) communicated to one of the Messrs. Owsley's, for the first time, the fact that their cotton had been shipped to New York and been sold there; and that he made no objection—in other words, said nothing. Does silence, under such circumstances, amount to a ratification of an unauthorized act of an agent? The Court below instructed the jury that it did. We cannot concur in that opinion.

We do not deny but that ratification may be implied, even from the silence of the principal. If I ship cotton to my factor at Savannah, and he informs me, that owing to the derangement of the currency there, the want of shipping in port, or any other cause, it will be greatly to my benefit to have the produce forwarded to New York and sold, and I do not object, he might probably infer my consent or acquiescence.

[5.] So, if one, in the presence of the principal, sell a parcel of goods of the latter, as his agent, without objection, the tacit consent of the principal will be presumed; and it will bind him.

[6.] Indeed, if the agent, without authority, should do any act, and the principal, after a knowledge of the fact, should make no objection, but acquiesce for a length of time—especially where such acquiescence cannot be explained or otherwise accounted for; and which has a tendency to mislead the agent; in all such cases, and many others, which might be supposed, the law would construe such silence as contrary to the duty of the principal; and he would be held bound by it. (1 *Liverm. on Agency*, 45, 47.)

But in the case before us, no such presumption arises. The

cotton was sent to a different market, and sold without orders. No notice is given to the principal for twelve months; it is then casually mentioned merely, to one of the joint owners of the cotton, who says nothing. It does not appear even, that the terms upon which the cotton was sold, were communicated. Such silence cannot be construed into a ratification of the unauthorized act.

[7.] Upon this state of the case, instead of charging the Owsleys with the loss which occurred in New York, an account should be taken between Owsley & Son, and Mrs. Reid, estimating their cotton at what it was worth in Savannah, at the time it was forwarded to New York, and the balance struck between that and the amount of her advances to the Owsleys; and, according to the testimony of Mr. Wellman, this mode of computation, would about make the parties even. All this, however, is properly the subject of proof on the trial.

This, it seems to us, constitutes the equity of this transaction between these parties; especially when it is remembered that Mr. Wellman admits, in his evidence, that he never rendered to the Owsleys, *at any time*, an account of the New York sales; and moreover, that the Messrs. Graves' were not entitled to look to the Owsleys for any loss on account of this transaction; but on the contrary, that it fell exclusively upon Mrs. Reid.

The Court was requested to charge the jury, that if Mrs. Reid acted as the agent of Owsley & Son, in forwarding to E. & R. R. Graves the cotton, and afterwards settled the loss sustained on this shipment, at twenty-five cents in the dollar, that then, she was only entitled to receive that amount of her principal. This the Court refused to do; but instead, thereof, instructed the jury, "That *if* E. & R. R. Graves, could only look to the personal credit of Mrs. Reid, or Wellman, as her agent, and not to the garnishees, Owsley & Son, for reimbursement, in that event, it was no concern of Owsley & Son, upon what terms the loss was compromised."

The charge as asked, should have been given; and the charge as made, is wrong in this: the charge as requested, is upon the

assumption that the jury might possibly believe, that Mrs. Reid acted by authority of her principal, either previously delegated or subsequently recognized, in shipping the cotton to New York. Whereas, the charge as given, is based upon an entirely different and contrary state of facts—not, as the jury should have been told, because there was no sufficient proof of the agency ; but because, as they were left to infer it was not the law applicable to the testimony, as assumed in the request made by the attorney of the garnishees. That is to say, the jury may have believed that Mrs. Reid acted as the agent of the Owsleys in shipping the cotton ; and that still the Owsleys were not entitled to any abatement in the loss on their cotton, on account of the compromise made between Mrs. Reid and the Messrs. Graves'. They should have instructed in such a way as would have prevented the possibility of their falling into this error.

Whether Owsley & Son are entitled to the benefit of the compromise made by Mrs. Reid with Messrs. E. & R. R. Graves, depends upon the fact, of whether or not they are liable to her for the loss sustained upon their cotton. Mr. Wellman swears, that the reason which influenced the Messrs. Graves to make this advantageous adjustment with Mrs. Reid, was in consideration that she had been a liberal customer of their establishment—her transactions of that year alone, amounting to $370,000. Now, is it not apparent, that if Owsley & Son are to be held accountable for the loss upon their cotton, which she shipped without authority, that they are entitled to participate in the benefit of the compromise ? Their cotton was an item to swell the very large aggregate of her business, which induced the compromise ; and on their cotton, a portion of the loss was suffered, which caused a sum total, of from $14,000 to $16,000. How it is, that their agent, then, is entitled to the whole benefit of the very liberal release which was made, we cannot comprehend. Discharge them from all responsibility on account of the sale in New York, and they are excluded of course, from sharing in this compromise.

But the verdict found against the Owsleys, is made up en-

tirely from the account rendered by the Messrs Graves', of this New York sale. That is to say, they are debited with the cash advances made to them by Mrs. Reid, and credited with the nett proceeds of the cotton in New York. Whereas, even if they are to be bound by this sale, as we have endeavored to show they are not, instead of charging them with the whole amount of loss sustained on the 245 bags of cotton sold in New York, they should be held accountable for one fourth only of the loss, the same having been settled with Mrs. Reid, their agent, upon those terms. And in that aspect of the case, the verdict is manifestly unjust.

So that upon any and every view of the evidence, the case should be remanded for a new trial.