## Colquitt, governor, *vs.* J. W. & W. L. Smith.

Where a bank was selected by the governor as a state depository, if one of the stockholders therein gave verbal authority to her sister to sign her name as a surety on the bond required of the bank, which was done, and if, after being informed thereof, she made no objection, but said that it was all right, and allowed the state to deposit its funds in the bank on the faith of the bond, as to the state and her co-sureties, she would be estopped from denying that her name was signed to the bond by competent authority; and the execution issued on the bond, after default by the bank, would bind the property held by her or subsequently transferred by her to others.

(*a.*) If she, in fact, signed her own name, it would, of course, be binding.

(*b.*) A verdict subjecting the property was demanded by the evidence, and the grant of a new trial was error.

April 20, 1886.

Principal and Surety. State Depositories. Estoppel. Contracts. New Trial. Before Judge BRANHAM. Floyd Superior Court. March Adjourned Term, 1885

Reported in the decision.

CLIFFORD ANDERSON, attorney general; JACKSON & KING; DABNEY & FOUCHE', for plaintiff in error.

UNDERWOOD & ROWELL, for defendants.

BLANDFORD, Justice.

The Bank of Rome having been selected by the governor as a state depository, the bank was required to give

bond and security under the law for the safe-keeping and proper accounting for the money deposited therein by the state.    The bank failed, and execution was duly issued on the bond against the bank and its sureties on said bond. The execution was issued against Mrs. M. P. Deason, as one of the sureties for the bank on said bond, and was levied on certain property as hers, to which property defendants in error interposed a claim.    This claim was tried and the property found subject.    The claimants moved for a new trial, which the court granted, and this decision is alleged as error.

On the trial of the case, the main question was, did Mrs. Deason sign the bond, or was she bound by reason of the fact that she verbally authorized another to sign her name to the bond, under the facts of this case.

J. B. Hine testified that, as notary public, he witnessed the execution of the bond, and that he saw Mrs. Deason sign the same; he was positive and not mistaken.    Several witnesses swore that the signature was not that of Mrs. Deason, and that she was not in Rome the day of the date of the bond, but was seven miles in the country, staying with a sister.

Mrs. Deason testified that she did not sign the bond, nor was she present when the same was signed; and further, if Mrs. Samuel, her sister, signed her name to the bond, it was not necessary to get her special consent, if she thought it would be for their mutual interest, for she knew witness would ratify it.    She did not know how long it was after her name was signed to the bond when she was informed of it; she did not then make any objection or notify the governor of the same, or any one else; some of her land was levied on and sold under the execution in this case, and it was sold without objection by her.

C. G. Samuel testified that Mrs. Deason was his wife's sister; that her name was signed to the bond by his wife; that Mrs. Deason gave witness and his wife either verbal authority to sign the bond.    Mrs. Deason was a stock-

holder in the bank; I afterwards notified her about the bond, and that the bank was a state depository; she said anything witness did was all right with her. After the bank failed, she said it was all right.

Mrs. Samuel was not sworn in this case, and no reason is assigned why she was not.

When it is taken into consideration that Mrs. Deason was a stockholder in this bank and expected a benefit by its becoming a state depository, that she gave verbal authority to her sister to sign her name to the bond, which the bank had to give the state before it could become a depository of the money of the state, and when she was informed about the matter, she made no objection, but said that it was all right, that she made no complaint to the governor or to her co-sureties, and allowed the state to deposit its funds in the bank, then, as to the state and her co-securities, she is estopped from denying that her name was signed to the bond by competent authority. To rule otherwise would be to allow her to perpetrate a fraud on the state and her co-sureties on the bond; she knew that the state and her co-sureties relied on her name being on the bond as genuine and authorized by her. She knew that her name had been signed to the bond as one of the sureties for the bank, and if she disclaimed the act by which her name was signed to the bond, she should have immediately given notice of her disclaimer to the governor and her co-sureties. She could not wait to see if the bank made money by becoming a state depository and receive as a stockholder her part of the same, and in case of a failure, repudiate the authority which made her a surety. 53 *Ga.*, 314; 14 *Ga.*, 124; 39 *Ga.*, 586; 16 *Ga.*, 384; *Ib.*, 424.

So we think that, taking all the evidence in this case, the verdict of the jury was demanded by the law as applicable thereto, and that the court erred in granting a new trial in this case.

Judgment reversed.