## 60057. MILLER et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

BANKE, Judge.

The appellee insurance company sued for a declaratory judgment to determine its liability for uninsured motorist benefits under two insurance policies issued to the appellant's deceased husband, who was killed when his motorcycle collided with a truck driven by an uninsured motorist. The appellant was also riding on the motorcycle and also sustained serious injuries.

The deceased had purchased four separate policies of motor vehicle insurance from the appellee, one on the motorcycle, one on a truck, and one each on two automobiles. The motorcycle policy included uninsured motorist coverage, and the appellee has paid the full benefits due thereunder. The husband personally executed a written rejection of uninsured motorist coverage on one of the other three policies. This litigation thus concerns only the remaining two policies. The appellant admits that at her husband's direction she signed his name to written rejections of uninsured motorist coverage with respect to these policies. It also appears without dispute that the policies were renewed for several years without uninsured motorist coverage and that no premium was ever charged for the coverage. Nevertheless, the appellant contends that the coverage was mandated by Code Ann. § 56-407.1 (a), which provides that uninsured motorist coverage must be included in an automobile liability policy unless rejected in writing by "any insured named in the policy . . ." The appeal is from the grant of summary judgment to the appellee insurance company. *Held:*

1. We reject, as did the trial court, the insurance company's contention that the term "any insured named in the policy" refers to any insured covered by the policy and thus includes the appellant. Instead, it clearly refers only to the named insured. Accord, Weathers v. Missions Ins. Co., 258 S2d 277 (Fla. App. 1972) (construing identical language in the Florida statute). To adopt the company's interpretation would be to ignore the statute's use of the words "named in the policy" to qualify the word "insured." It would also result in a totally unworkable situation in which any relative in the named insured's household could unilaterally decide to reject his uninsured motorist coverage, regardless of his wishes, as could, to quote the company's language from its brief, any person actually "in the insured vehicle at the time of the rejection either as guests of the named insured or as a driver of the insured vehicle with the named insured's permission."

2. Although the appellant was clearly without authority to sign

the rejections in her own right, we also agree with the trial court that she is bound by her admission that she signed her husband's name to the forms on his direct instructions, following a discussion in which he told her that he did not wish to spend the extra money for the uninsured motorist coverage. The appellant contends that because the authorization from her husband was not in writing it was invalid under the "equal dignities rule." That rule requires that "[t]he act creating the agency shall be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency shall be created." Code § 4-105. The California decision of Dufresne v. Elite Ins. Co., 26 Cal. App. 3d 916 (103 Cal. Rptr. 347), construing similar language in the California statute, is cited in support of this position.

Although Dufresne was ostensibly based on the equal dignities rule, it is distinguished by the fact that the named insured there instructed not his wife but the insurance agent to sign his name to the waiver agreement. The agent's loyalties on the question of whether coverage existed once a claim arose were, of course, divided at best. The court reasoned that to give effect to the waiver under these circumstances would be to invite the very type of dispute and litigation which the statute requiring a signed rejection had been designed to prevent. In the case before us, however, it is the claimant herself who signed the rejection, and she admits having done so at the express direction of her husband, the named insured. (These same facts distinguish this case from two other foreign cases cited by the appellant, Protective Nat. Ins. Co. of Omaha v. McCall, 310 S2d 324 (Fla. App. 1975) and State Farm Mut. Auto Ins. Co. v. Martin, 289 S2d 606 (Ala. 1974)). The insurance company clearly should not be penalized for failing to provide uninsured motorist coverage under these circumstances, and it would contravene any notion of justice to allow the appellant to disavow her admitted agency in an attempt to impose liability. Accordingly, we hold that the appellant is estopped from claiming that she signed her husband's name without proper authority. Accord, *Colquitt v. Smith,* 76 Ga. 709 (1886); *McCalla v. Amer. Freehold &c. Co.,* 90 Ga. 113 (3) (15 SE 687) (1892). See also *Brown v. Colquitt,* 73 Ga. 59 (2) (1884); *Smith v. Farmers' Mut. Ins. Assn. of Ga.,* 111 Ga. 737 (36 SE 957) (1900); *Brandon v. Pritchett,* 126 Ga. 286 (1) (55 SE 241) (1906). Cf. *Hartford Ins. Group v. Voyles,* 149 Ga. App. 517, 520 (254 SE2d 867) (1979) (holding that an employer who has assured a worker that he is covered by worker's compensation, and who has deducted a fee for such coverage from the worker's paycheck over an extended period of time, may not later disavow coverage).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

ARGUED JUNE 5, 1980 — DECIDED JULY 9, 1980 —
REHEARING DENIED JULY 31, 1980 —

*C. James McCallar, Jr.,* for appellants.
*William H. Pinson, Jr.,* for appellee.