TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-01-00150-CV







Old American County Mutual Fire Insurance Company/Zeferino Sanchez, Appellants


v.


Zeferino Sanchez/Old American County Mutual Fire Insurance Company, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. 99-13220, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





 Pursuant to Zeferino Sanchez's motion for rehearing, we grant the motion, withdraw
our opinion and judgment rendered November 15, 2001, and substitute the following opinion.

 Old American County Mutual Fire Insurance Company ("Old American") sought a
declaratory judgment against Zeferino Sanchez that it was not obligated to pay for injuries Sanchez
received in an accident. Sanchez filed a counterclaim to receive payment from Old American. Old
American moved for summary judgment, which the trial court granted on the ground that Sanchez
was "occupying" an owned, but unscheduled vehicle under his insurance policy. Sanchez appeals
the grant of summary judgment. We will reverse the trial court's summary judgment in favor of Old
American and remand for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND

 On April 11, 1999, Sanchez was injured when an uninsured motorist hit a truck
owned by Sanchez but not scheduled as a covered vehicle on his automobile insurance policy. At
the time of the accident, Sanchez was underneath the truck working on the gas tank hose. The truck
collapsed on Sanchez, severing his spinal cord.

 Sanchez sought to recover uninsured motorist coverage ("UM") and personal injury
protection coverage ("PIP") from Old American. Sanchez's insurance policy with Old American
listed two other vehicles but did not list the truck Sanchez was working under when he was injured. 
Sanchez's wife purchased the policy, but it listed Sanchez as the only "named insured." On the
application, she rejected coverage for PIP and UM and premiums were never assessed for these
coverages. Both the PIP and UM provisions of Sanchez's policy exclude coverage for injuries
sustained while "occupying" or when "struck by" any vehicle owned by the insured that is not
insured under the policy (the "owned-vehicle exclusion"). Old American sought summary judgment
on several grounds including that Sanchez was "occupying" his truck at the time of the accident. 
The trial court granted summary judgment on this ground.

 Old American also sought summary judgment on the ground that Sanchez rejected
PIP and UM benefits because his wife, an insured under the policy, rejected PIP and UM in writing
on the insurance application for Sanchez. Sanchez claims that the rejection was not effective
because his wife had purchased and signed the policy instead of him, and his wife was not the
"named insured." The trial court denied this ground. Finally, Old American sought summary
judgment on the ground that Sanchez was struck by his unscheduled vehicle, thus precluding
recovery due to the owned-vehicle exclusion in his policy. Sanchez claims that he was not "struck
by" his vehicle for purposes of the owned-vehicle exclusion in his policy because his vehicle was
not the striking force responsible for the accident. The trial court did not rule on this ground.

 Sanchez now appeals the trial court's grant of summary judgment, and Old American
cross-appeals that it was also entitled to summary judgment on the grounds that Sanchez rejected
UM and PIP coverage and that Sanchez was "struck by" an owned, but unscheduled vehicle. The
case was heard on stipulated facts, thus we are only presented with questions of law.


STANDARD OF REVIEW

 The standards for review of a summary judgment are well-established: (1) the
movant must show there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the
nonmovant's favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). We
review the trial court's decision to grant summary judgment de novo. Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994).

 When a trial court grants summary judgment on a specific ground, an appellate court
should consider all summary judgment grounds the trial court rules on, that are preserved for review,
and that are necessary for a final disposition of the appeal. Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 625-26 (Tex. 1996). The appellate rules give us authority to consider alternate grounds
presented by the movant on which summary judgment could have been granted. Tex. R. App. P.
43.3; Cincinnati Life, 927 S.W.2d. at 626. Thus, we may review all grounds that the movant
presented to the trial court in its motion for summary judgment if they are preserved for appeal. 
Cincinnati Life, 927 S.W.2d at 626. 


DISCUSSION

The Meaning of "Occupying" in PIP and UM Clauses

 In his only issue, Sanchez claims that the trial court erred in its determination that
Sanchez was "occupying" the unscheduled truck at the time of the accident. According to Sanchez,
the term "occupying" as it is defined in the policy does not encompass lying underneath a vehicle
while in contact with its gas hose. Old American takes the opposite view.

 If Sanchez was occupying his truck at the time of the accident, his claim would be
barred because of the owned-vehicle exclusion in his insurance policy. (1) Texas courts have held that
the owned-vehicle exclusion is valid for both PIP and UM coverage. See Holyfield v. Members Mut.
Ins. Co., 572 S.W.2d 672, 673 (Tex. 1978) (PIP); Conlin v. State Farm Mut. Auto. Ins. Co., 828
S.W.2d 332, 336-37 (Tex. App.--Austin 1992, writ denied) (UM). (2)

 The general rules of contract construction govern the interpretation of insurance
policies. See Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). Construing
contractual language is a question of law for the courts. State Farm Fire & Cas. Co. v. Vaughan,
968 S.W.2d 931, 933 (Tex. 1998). A contract is unambiguous if it can be given a definite or certain
legal meaning. Grain Dealers, 943 S.W.2d at 458. Terms in contracts are to be given their plain,
ordinary meaning unless the contract shows that particular definitions are used to replace ordinary
meaning. See Western Reserve Life Ins. v. Meadows, 261 S.W.2d 554, 557 (Tex. 1953).

 Under the terms of Sanchez's insurance policy, occupying is defined as "in, upon,
getting in, on, out or off." Because Sanchez was neither entering nor exiting the truck, and was not
inside or on the truck, he will only be barred from recovery under his policy's exemption if he is
found to be "upon" the vehicle. "Upon" is not defined in the policy. 

 Applying the plain and ordinary meaning of "upon" supports Sanchez's claim that
he was not occupying the vehicle. The Second Court of Appeals construed the meaning of "upon"
in Hart v. Traders & General Insurance Co., holding that the insured party was occupying the car
while resting on the car's fender. 487 S.W.2d at 418-19. The court in Hart assumed that the policy
was unambiguous and interpreted "upon" based on its definition in the dictionary. Id. at 418. 
"Upon" is defined as "on" or "on the surface." Webster's Third New International Dictionary 2517-18 (1986). "On" is defined as being in "position over or in contact with that which supports from
beneath," or to indicate "contiguity and dependence with," such as a "fly on the wall." Id. at 1574. 
"On" is also defined as "in or into the position of being in contact with the upper surface of
something or of being supported from beneath by the upper surface," as in "plates on a table." Id.
at 1575. These definitions suggest that one needs to be supported by an object to be deemed "on"
the object. In contrast, Sanchez was lying on his back holding onto a hose attached to his truck; he
was not supported by or dependent on the truck. Sanchez was on the ground, not on the truck.

 Old American emphasizes Hart's statement that being in contact with the vehicle is
enough to establish occupancy and Hart's statement that a fly on the wall is "upon" the wall. Hart,
487 S.W.2d at 418. However, the court in Hart used the fly on the wall example in the same manner
as Webster's Dictionary's definition of "on." Webster's emphasizes that the fly is "contiguous and
dependent" with the wall, not merely in contact with the wall. Webster's Dictionary at 1575
(emphasis added). Sanchez was dependent on the ground, not dependent on the truck. Furthermore,
the "fly on the wall" phrase in Hart is dictum as the majority of the plaintiff's weight was being
supported by the car. Hart, 487 S.W.2d at 416-17. The court so noted:


Here it is not even necessary for us to hold that mere contact with the insured car is
sufficient in order to sustain a recovery for a person being "upon" such car within the
meaning of the policy. In this case there was far more than mere physical contact
between plaintiff and the insured car. At the time he was hurt practically the entire
weight of the plaintiff's body was being supported from beneath by the insured car
. . . . 



Id. at 420.

 In contrast, the entire weight of Sanchez's body was being supported from beneath
by the ground, not by his truck. In addition, we note that the Hart court defined occupying so as to
provide coverage for the injured party, not to deny coverage. At the end of Hart, the court
distinguishes its opinion from Pennsylvania National Mutual Casualty Insurance Co. v. Bristow, 150
S.E.2d 125 (Va. 1966), where it was held that a man leaning over the engine while touching the
bumper with his legs was not occupying the vehicle. Hart, 487 S.W.2d at 420. Noting that Bristow
was different because the plaintiff's weight was not supported by the car, the Hart court further
distinguished the opinion by observing that Bristow dealt with one insurance company suing another
insurance company, thus the ruling did not bar the insured from recovering for his injuries. Id. at
420-21. (3)

 While we have assumed that the insurance policy at issue here is unambiguous, we
note that courts in some states have specifically found that the insurance policy in question
ambiguously defines occupying. (4) See, e.g., Michigan Mut. Ins. Co. v. Combs, 446 N.E.2d 1001,
1007 (Ind. Ct. App. 1983); Westerfield v. La Fleur, 493 So. 2d 600, 601 (La. 1986); Genther v.
Progressive Cas. Ins. Co., 681 A.2d 479, 480 (Me. 1996); see also Jacqueline G. Slifkin,
Annotation, Automobile Insurance: What Constitutes "Occupying" Under Owned-Vehicle Exclusion
of Uninsured- or Underinsured-Motorist Coverage of Automobile Insurance Policy, 59 A.L.R. 5th
191, 198-99 (1998) (summarizing the numerous cases and different outcomes involving similar fact
patterns in other states in which courts have construed "occupying"). When a contract is ambiguous,
it will be interpreted in favor of coverage for the insured. Grain Dealers, 943 S.W.2d at 458.

 In summary, we conclude that we cannot alter the plain and ordinary meaning of the
term "upon" to include touching a vehicle from below while resting on the ground beneath the
vehicle. Therefore, we hold that Old American failed to demonstrate as a matter of law that Sanchez
was "occupying" his unscheduled truck at the time of the accident precluding recovery under the
owned-vehicle exclusion in his policy; thus the trial court erred in granting summary judgment on
this ground. We sustain Sanchez's issue.


Rejection of PIP and UM

 In our original opinion we sustained Old American's second cross-point on appeal
that summary judgment should have been granted on the ground that Sanchez, through his wife,
rejected coverage for PIP and UM in his insurance policy. In response, Sanchez claimed that the
rejection was invalid because his wife is not a "named insured" in the policy. In his motion for
rehearing, Sanchez argues that we erred in interpreting the rejection provisions of the PIP and UM
sections of the Texas Insurance Code (the "statute"). Specifically, he contends that we allowed a
policy definition to control over the language of the PIP and UM statutes and that the intent of the
legislature as expressed in the statute should control. Upon reconsideration, we agree and will affirm
the trial court's refusal to grant summary judgment on this ground.

 Article 5.06-1(1) of the Texas Insurance Code states that all automobile insurance
policies should provide UM coverage except where "any insured named in the policy shall reject the
coverage in writing." (5) Tex. Ins. Code Ann. art. 5.06-1(1) (West 1981) (emphasis added). Similarly,
article 5.06-3 mandates PIP coverage except where "any insured named in the policy shall reject the
coverage in writing . . . ." Id. art. 5.06-3 (emphasis added). (6) 

 The question presented is whether Margarita Sanchez qualifies as "any insured named
in the policy" as set forth in the statute. In construing a statute, our principle aim is to give effect
to the legislature's intent. Continental Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d
393, 398 (Tex. 2000). We consider the plain and common meaning of the statute's words and
examine the entire statute, not only the disputed sections. Id. Furthermore, the court must presume
that every word in a statute has been used for some purpose and that every word excluded was
excluded for a purpose. Renaissance Park v. Davila, 27 S.W.3d 252, 256 (Tex. App.--Austin 2000,
no pet.). Articles 5.01-1(1) and 5.06-3 indicate that the legislature intended for PIP and UM
coverage to apply in automobile insurance policies unless specifically rejected in writing by any
insured named in the policy.

 To uphold the legislature's intent of providing broad PIP and UM coverage, Texas
courts have interpreted PIP and UM clauses in insurance policies in favor of the insured. The
purpose of PIP and UM coverage is to protect conscientious drivers from irresponsible parties and,
because of their importance, the PIP and UM statutes should be liberally construed by courts. See
Ortiz v. State Farm Mut. Auto. Ins. Co., 955 S.W.2d 353, 356-57 (Tex. App.--San Antonio 1997,
writ denied); see also Stracener v. United Serv. Auto Ass'n, 777 S.W.2d 378, 382 (Tex. 1989)
(stating that UM article should be liberally construed). For this reason, courts have held that
rejection of PIP and UM must be express and clear. Unigard Sec. Ins. Co. v. Schaefer, 572 S.W.2d
303, 308 (Tex. 1978). "Because the provision of such mandated coverage is a matter of public
policy, a claim of rejection thereof should not be determined simply by reference to the rules which
courts otherwise apply to determine the intent and acts of contracting parties." Id. Furthermore,
absent a valid rejection, UM and PIP coverage apply as a matter of law. Howard v. INA County Mut.
Ins. Co., 933 S.W.2d 212, 218 (Tex. App.--Dallas 1996, writ denied).

 Old American argues that because Sanchez's policy defines "you" and "your" as the
named insured and the spouse of the named insured if living in the same household, Margarita
Sanchez qualifies "as any insured named in the policy" pursuant to statute. (7) Additionally, Old
American argues that, by its terms, the statute does not limit the class of persons who may reject
coverage to only a "named insured." We agree with Old American that "named insured" is a term
of art that refers specifically to the insured listed on the declarations page of the insurance policy. 
See Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 4.3 (2d. ed. 1999). (8) Under
the statute, "any insured named" may reject UM and PIP, indicating that the legislature did not intend
to limit the class of persons that may reject coverage to a "named insured," i.e., an insured listed on
the declarations page. However, the statute further specifies that a valid rejection may be
accomplished only by "any insured named in the policy," not simply "any insured named." While
Margarita Sanchez's name does appear on the insurance application, she is not explicitly named
anywhere in the insurance policy. Thus, Old American has not shown that she is an "insured named
in the policy" as required by statute.

 In its response to Sanchez's motion for rehearing, Old American cites authority from
other states, in particular Acquesta v. Industrial Fire & Casualty Co., 467 So.2d 284, 285 (Fla.
1985), in support of its argument that the law of agency permits a spouse to reject coverage on behalf
of the other spouse. In Acquesta, the Florida Supreme Court affirmed an appellate court decision
that, based on agency principles, a spouse of the named insured could reject UM, reasoning that if
the spouse has the authority to apply for the insurance policy, she has the authority to reject UM
coverage. Id; see also St. Paul Mercury Ins. Co. v. MacDonald, 509 So.2d. 1139, 1140-41 (Fla. Dist.
Ct. App. 1987).

 Initially, we note that Old American did not make the law of agency argument in its
motion for summary judgment below; thus, it has waived it on appeal. See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 675-77 (Tex. 1979). Moreover, Acquesta is factually
distinguishable from the instant case because the wife who rejected coverage on behalf of her
husband was the named insured. The appellate court's opinion noted: "[W]e have applied
traditional agency law but we have not overlooked the argument of [the insurance company] that
Crystal signed as 'applicant' and we notice that the named insured in the policy was the person who
rejected the coverage." (9) Industrial Fire & Cas. Co. v. Acquesta, 448 So.2d. 1122, 1123 (Fla. Ct. App
1984) (emphasis added). Here the named insured in the policy did not reject coverage.

 The other cases Old American refers us to are also distinguishable. Bonnette v
Robles, 740 So.2d 261, 262 (La. Ct. App. 1999) (spouse elected lower UM coverage and signed as
"named insured"); Oncale, 417 So.2d at 474-75 (policy clearly defined "named insured" as including
spouse); Johnson v. Great Am. Ins. Co., 541 N.E.2d 100, 104 (Oh. Ct. App. 1988) (named insured
can reject on behalf of other named insured). Two summary judgment cases cited by Old American
merit further discussion. In Daniels v. Colonial Insurance Co., 857 S.W.2d 162,164 (Ark. 1993),
the Arkansas Supreme Court, confronted with a policy that defined "you" and "your" in much the
same way as Sanchez's policy, held that a wife who was not listed on the declarations page was
nonetheless a named insured and could reject coverage on behalf of her husband. However, in
reaching its decision, the Arkansas court relied solely on principles of contract interpretation and did
not address or cite an Arkansas UM statute. In Ridgway v. Shelter Insurance Companies, the court
held that, based on agency principles, the insured's girlfriend could reject coverage on his behalf
although she was not a named insured. See 913 P.2d 1231, 1234-35 (Kan. App. 1996). But unlike
the instant case, the Kansas appellate court was presented with summary judgment evidence on the
issue of whether the girlfriend had the authority to reject coverage, from which it was able to
conclude that there was no genuine issue of material fact. Id. at 1235.

 Finally, we note that Old American could have avoided this result by simply listing
Margarita Sanchez on the declarations page as a named insured or including her by name somewhere
in the policy. We conclude that Old American failed to prove as a matter of law that Margarita
Sanchez is a named insured or "any insured named" vested with the authority to reject UM and PIP
coverage on behalf of her spouse; therefore, we overrule Old American's second cross-point on
appeal.


The Meaning of "Struck by" in PIP and UM Clauses

 Old American's first cross-point on appeal is that the trial court should have granted
summary judgment on the ground that Sanchez was "struck by" a vehicle owned by him that was not
covered under his insurance policy. The trial court did not rule on this ground. Having decided in
the previous section that UM and PIP coverage apply in this case as a matter of law, Sanchez may
obtain benefits unless the "struck by" provision of the owned-vehicle exclusion in his insurance
policy precludes coverage. Thus, we must determine if Sanchez was "struck by" his unscheduled
vehicle when the vehicle driven by the uninsured motorist was the striking force in the collision.

 The Texas Supreme Court has established that a passive vehicle cannot be the striking
force in a collision. See Gallup v. St. Paul Ins. Co., 515 S.W.2d 249, 249 (Tex. 1974) (youth on
motorbike who drove into rear of stopped car supplied striking force); Houston Fire & Cas. Ins. Co.
v. Kahn, 359 S.W.2d 892, 892 (Tex. 1962) (youth on bicycle who rode into back of parked car
supplied striking force). In Kahn, the supreme court reviewed language of a clause in an insurance
policy that covered bodily injury "caused by accident . . . through being struck by an automobile." 
Id. at 892. The court reasoned that "the automobile with which the [youth] collided was parked and
cannot very well be regarded as a moving or striking force." Kahn, 359 S.W.2d at 893. Instead, the
court held that "the automobile causing the injury must have been a causative force in the collision
before it can be said to have struck the insured." Id. (emphasis added). Similarly, the Gallup court
decided, by applying the popular and usual meaning of the words in the phrase "being struck by an
automobile," that "Keith Gallup was not struck by the Langston automobile, which was standing still
when Keith ran into it." Gallup, 515 S.W.2d at 251.

 While these cases were decided in the context of obtaining UM and medical payment
coverage, they indicate the striking force must be the "causative force" of the collision. See Kahn,
359 S.W.2d at 893. In the instant case, Sanchez's parked truck was a passive vehicle when the
uninsured motorist ran into it. Therefore, we conclude that the uninsured motorist's vehicle was the
striking or "causative" force that struck Sanchez, not his passive unscheduled truck.

 In addition, Texas courts have held that the object supplying the striking or
"causative" force does not have to directly contact the insured in order for the insured to recover
insurance benefits. See Latham v. Mountain States Mut. Cas. Co., 482 S.W.2d 655, 657 (Tex.
App.--Houston [1st Dist.] 1972, writ ref'd n.r.e); see also Hale v. Allstate Ins. Co., 344 S.W.2d 430,
434 (Tex. 1961) (holding in suit to obtain benefits under medical payments provision of insurance
plan that plaintiff could be struck by automobile without actual physical touching between person
injured and object doing the striking). (10) In Latham, the plaintiffs, Sarah Latham and Nora Carter,
were stopped in traffic when a car immediately behind them was struck from the rear by a pick-up
truck causing it to hit their automobile. 482 S.W.2d at 656. The pick-up truck left the scene and was
never identified. Id. The plaintiffs attempted to recover for personal injuries they sustained under
the UM provision in Latham's policy. Id. at 656-57. The First Court of Appeals held that indirect
contact between the uninsured motorist's vehicle and the insured party was sufficient to satisfy the
"physical contact" requirement of Latham's policy. Id. at 657. "Where a car A strikes car B and
propels it into car C, there is physical contact between Car A and Car C within the meaning of such
a provision." Id. Although the section of the UM statute governing unidentified, or "hit and run,"
uninsured motorists has since been modified to require "actual physical contact" between the injured
party and the hit and run motorist, see Tex. Ins. Code Ann. art. 5.06-1(2)(d) (West Supp. 2002), the
indirect contact rule survives in the fact situation of where car A hits car B which then hits car C. 
See Texas Farmers Ins. Co. v. Deville, 988 S.W.2d 331, 333-34 (Tex. App.--Houston [1st Dist.]
1999, no pet.) (holding that indirect contact rule does not apply where decedent was struck by water
pump that fell from unidentified vehicle); Williams v. Allstate Ins. Co., 849 S.W.2d 859, 861 (Tex.
App.--Beaumont 1993, no writ) (stating that recovery permitted where uninsured vehicle "created
uninterrupted chain of physical events between another motor vehicle/vehicles which ultimately
resulted in insured's injury"); see also James L. Cornell and John H. Thomisse, Jr.,
Uninsured/Underinsured Motorist Coverage: A Roadmap of Coverage, 62 Tex. B. J. 342, 345
(1999) (recognizing the continued validity of Latham fact pattern). Texas thus recognizes the
validity of a claim by a person who is injured by a vehicle set into motion by another vehicle. This
is precisely what happened to Sanchez in the instant case. The uninsured motorist (car A) hit
Sanchez's passive truck (car B), which fell on Sanchez and severed his spinal cord. (11)

 We overrule Old American's first cross-point on appeal.


CONCLUSION

 We sustain Sanchez's issue that he was not occupying his unscheduled vehicle when
it was hit by the uninsured motorist. We overrule Old American's cross-points that Sanchez rejected
UM and PIP coverage and that he was "struck by" his unscheduled vehicle. Accordingly, we reverse
the trial court's grant of summary judgment and remand for further proceedings.



 

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed: June 27, 2002

Publish

1. Sanchez's insurance policy states, "We do not provide Personal Injury Protection Coverage
for any person for bodily injury sustained . . .[w]hile occupying, or when struck by, any motor
vehicle (other than your covered auto) which is owned by you." It also states, "We do not provide
Uninsured/Underinsured Motorists Coverage for any person: 1. For bodily injury sustained while
occupying, or when struck by, any motor vehicle or trailer of any type owned by you or any family
member which is not insured for this coverage under this policy." 
2. Some jurisdictions have found owned-vehicle exclusions violate the public policy behind
UM coverage because their statutes are designed to extend UM coverage. See Jacqueline G. Slifkin,
Annotation, Automobile Insurance: What Constitutes "Occupying" Under Owned-Vehicle Exclusion
of Uninsured- or Underinsured-Motorist Coverage of Automobile Insurance Policy, 59 A.L.R. 5th
191, 198-99 (1998). Other jurisdictions have upheld the exclusions because they "encourage motor-vehicle owners to secure insurance on all of their vehicles." Id. at 197.
3. Appellant cites case law from other states in which courts held the insured to be
"occupying" the vehicle if the insured was simply "vehicle-oriented"; however, in so holding, all of
those courts enabled an insured to recover insurance benefits, rather than deny benefits. See
generally Moherek v. Tucker, 230 N.W.2d 148 (Wis. 1975); Cocking v. State Farm Mut. Auto. Ins.
Co., 86 Cal. Rptr. 193 (Cal. Ct. App. 1970); Madden v. Farm Bureau Mut. Auto. Ins. Co., 79 N.E.2d
586 (Ohio Ct. App. 1948); Transport Ins. Co. v. Ford, 886 S.W.2d 901 (Ky. Ct. App. 1994); Pope
v. Stolts, 712 S.W.2d 434 (Mo. Ct. App. 1986). As a general rule, courts are more likely to find that
the insured is occupying the vehicle if such a finding establishes coverage for the insured than they
are if the finding would strip the insured of coverage. See Slifkin, supra note 2, at 198. 
4. Neither party argued that the policy was ambiguous in its motion for summary judgment.
5. Art. 5.06-1(1) of the Texas Insurance Code states:


No automobile liability insurance (including insurance issued pursuant to an
Assigned Risk Plan established under authority of Section 35 of the Texas Motor
Vehicle Safety-Responsibility Act), covering liability arising out of the
ownership, maintenance, or use of any motor vehicle shall be delivered or issued
for delivery in this state unless coverage is provided therein or supplemented
thereto, in at least the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the Board, for the protection
of persons insured thereunder who are legally entitled to recover damages from
owners or operators of uninsured or underinsured because of bodily injury,
sickness, or disease, including death, or property damage resulting therefrom.
The coverages required under this Article shall not be applicable where any
insured named in the policy shall reject the coverage in writing; provided that
unless the named insured thereafter requests such coverage in writing, such
coverage need not be provided in or supplemental to a renewal policy where the
named insured has rejected the coverage in connection with a policy previously
issued to him by the same insurer or by an affiliated insurer. 


Tex. Ins. Code Ann. art. 5.06-1(1) (West 1981). 
6. Texas Insurance Code Art. 5.06-3(a) states:


No automobile liability insurance policy, including insurance issued pursuant to
an assigned risk plan established under authority of Section 35 of the Texas
Motor Vehicle Safety-Responsibility Act, covering liability arising out of the
ownership, maintenance, or use of any motor vehicle shall be delivered or issued
for delivery in this state unless personal injury protection coverage is provided
therein or supplemental thereto. The coverage required by this article shall not
be applicable if any insured named in the policy shall reject the coverage in
writing; provided, unless the named insured thereafter requests such coverage in
writing, such coverage need not be provided in or supplemental to a renewal
policy if the named insured has rejected the coverage in connection with a policy
previously issued to him by the same insurer or by an affiliated insurer. 


Id. art. 5.06-3. 
7. It is undisputed that Zeferino and Margarita Sanchez live in the same household.
8. Margarita Sanchez was not listed on the declarations page of the policy; thus, she was not
a "named insured."
9. Even though the wife in Acquesta was the named insured, the appellate court reached the
issue of whether a spouse who is not a named insured has apparent authority to reject coverage
because the court accepted the couple's position that the husband should have been listed as the
named insured on the policy. 467 So. 2d 284, 285. Apparently, the court reached this conclusion
because after the insurance company issued the policy in the wife's name, she asked that it be
reissued in her husband's name, and the insurance company complied with her request. Id. 
10. Texas is with the majority of states in this holding. "Although there is limited authority
to the contrary, it is generally held that medical payments provisions covering expenses incurred for
injury 'through being struck by an automobile' do not require physical contact between the striking
automobile and the insured." 10 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 158.41
(3d ed. 1998). This is also in accord with the common law of torts, which looks for the proximate
cause in assigning negligence.
11. The only difference from the Latham fact pattern is that Sanchez was not occupying a "Car
C" when the accident occurred. Whether Sanchez can recover under his policy as a pedestrian was
not addressed by Old American in its motion for summary judgment and thus is waived on appeal. 
See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 675-77 (Tex. 1979).