# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00641-CV

**Kathryn Payne and Carnell Gulley, Appellants**

**v.**

**Mid-Century Insurance Company of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 261,045, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment rendered against appellants Kathryn Payne and Carnell Gulley. The parties stipulated to certain material facts. The dispute arose out of a motor vehicle collision with a third party; both appellants were in Kathryn Payne's automobile and both were injured. The issue concerns whether appellants are entitled to personal injury protection ("PIP") benefits under the terms of a policy insuring Payne and issued by appellee Mid-Century Insurance Company of Texas (hereafter "Mid-Century"). The trial court held that they were not. We will affirm.

### Facts

Eddie Lynn Garner, a Farmers Insurance Group agent, has written all of the insurance policies for the Payne family since 1991. On or about April 11, 1994, Kathryn's mother purchased

a Texas Farmers Insurance Company (hereinafter "Farmers") policy naming Kathryn as the rated driver and signed an agreement deleting PIP coverage. Thereafter, Kathryn Payne and her parents, Wanda and Rodger Payne, were named insureds in Farmers policy number 3916 88 98 (hereinafter "the Farmers policy"). On April 19, 1996, Kathryn signed an agreement rejecting PIP coverage in connection with the Farmers policy. The waiver provided that the "rejection shall apply on this policy and all future renewals or replacements of this policy."

On April 20, 2001, the Farmers policy was cancelled and the automobile insurance policy number 3988 84 66 issued by Mid-Century insuring Kathryn became effective (hereinafter "the Mid-Century policy").[1] This was the policy in effect at the time of the automobile accident; both appellants were covered persons under the policy. Wanda Payne obtained the Mid-Century policy covering Kathryn and signed an agreement deleting PIP coverage. Kathryn never signed a subsequent agreement deleting PIP coverage nor did she ever request PIP coverage. The declarations page sent to Kathryn reflected that she had no PIP coverage. The Paynes never paid a premium for PIP coverage on any policy insuring Kathryn Payne, all of which were obtained through Garner as their agent.

The collision occurred on July 20, 2001. Mid-Century denied both appellants' claims for PIP benefits on the basis that the policy did not provide PIP coverage. Appellants filed this action to construe the policy. Both sides filed motions for summary judgment; the trial court granted Mid-Century's motion and denied the motion of Payne and Gulley, who appeal.

---

[1] Although the fact was not stipulated, the uncontroverted proof shows that the Mid-Century policy provided Kathryn the same coverage and limits as the Farmers policy, but at a lower cost. Wanda and Rodger Payne became insured under a separate Farmers policy.

2

## Standard of Review

The propriety of a summary judgment is a question of law; we review the trial court's decision *de novo*. *Natividad v. Alexis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The standards for reviewing a motion for summary judgment are well established: (1) the movant has the burden of showing that no genuine issue of material facts exists and that it is entitled to judgment as a matter of law; (2) evidence favorable to the nonmovant will be taken as true; (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *see* Tex. R. Civ. P. 166a (c). A defendant who moves for summary judgment has the burden of disproving one essential element of the plaintiff's cause of action or showing that the plaintiff cannot succeed on any theory pleaded. *See San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex. App.—San Antonio 1996, no writ).

## Discussion

Our disposition of the appeal turns on application of the insurance code's provision requiring that every automobile liability policy provide personal injury protection coverage except as provided by statute. The relevant terms are as follows:

> No automobile liability insurance policy . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. *The coverage required by this article shall not be applicable if any insured named in the policy shall reject the coverage in writing; provided, unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.*

3

Tex. Ins. Code Ann. art. 5.06-3(a) (West 1981) (emphasis added). Thus, every automobile liability policy must include PIP coverage as a matter of law unless effectively waived in accordance with the statute. PIP is not required if any insured named in the policy rejects coverage in writing. *See Old Am. County Mut. Fire Ins. Co. v. Sanchez*, 81 S.W.3d 452, 459-60 (Tex. App.—Austin 2002, pet filed). The rejection must be express and clear, and must be signed by a person explicitly named as an insured in the policy. *Id*. at 460. Further, unless the named insured thereafter requests the coverage in writing, PIP need not be provided in a renewal policy if the named insured has rejected PIP coverage in connection with a policy previously issued to the insured by an affiliated insurer. *Id.* at 458-59 nn.5-6. The "named insured" is a term of art that refers specifically to the insured listed on the declarations page of the insurance policy. *Id*. at 459. Absent a valid rejection, PIP coverage applies as a matter of law. *Id*.

Farmers and Mid-Century are affiliated companies as that term is defined in article 5.06-3 of the Texas Insurance Code. Kathryn was an insured named in the Farmers policy; she rejected PIP coverage in connection with the Farmers policy and never requested PIP coverage thereafter. Kathryn alone was the named insured in the Mid-Century policy. After the accident, Mid-Century denied PIP coverage on the basis that its named insured had rejected PIP coverage in a policy previously issued to her by an affiliated company. The first question becomes whether the Mid-Century policy was a renewal of the Farmers policy. If so, Kathryn's 1996 written rejection was effective as to the Mid-Century policy.

Mid-Century filed a motion for summary judgment alleging that it was entitled to judgment for at least two reasons: (1) the Mid-Century policy was a renewal of the Farmers policy

4

by an affiliated company, therefore Kathryn Payne's 1996 waiver of coverage in connection with the Farmers policy applies to the Mid-Century policy, and (2) Wanda Payne's 2001 waiver of PIP coverage was effective as to the Mid-Century policy because she was both an "insured named in the policy" and Kathryn Payne's agent authorized to waive coverage on her behalf.[2]

Appellants, on the other hand, responded that the written rejection Kathryn signed in 1996 was ineffective as to the Mid-Century policy for two reasons. First, although the Mid-Century policy might be considered a replacement of the Farmers policy, it could not be a renewal of the Farmers policy because the earlier policy insured three persons, Kathryn and her parents, while the Mid-Century policy covered only Kathryn. Further, Kathryn's written rejection agreeing that it applied to replacement policies was of no effect because the statute only provides that such a written rejection applies to a renewal policy but does not expressly state that it can apply to a replacement policy. Therefore, they argue, any earlier written waiver could not apply to the Mid-Century policy and, because Kathryn never signed a new waiver, appellants were entitled to judgment that the Mid-Century policy provided PIP coverage as a matter of law. Furthermore, they deny that Wanda was an insured named in the Mid-Century policy or that she was Kathryn's agent for the purpose of rejecting PIP coverage and, therefore, Wanda's 2001 waiver was ineffective as to the Mid-Century policy.

---

[2] Mid-Century also alleged that Wanda's 1994 waiver was effective because it was in connection with a policy previously issued by an affiliated insurer. The company does not assert this basis on appeal; it relies instead on Kathryn's 1996 waiver except in one reference at the end of its argument in support of this ground in which it adds, "Furthermore, under the ruling promulgated by *Berry* . . . the April 11, 1994, Agreement Deleting Personal Injury Protection signed by Wanda Payne effectively rejects PIP coverage in the Mid-Century policy."

5

We hold that Kathryn's 1996 written waiver effectively rejected PIP benefits under the Mid-Century policy. The summary judgment will stand on this basis. For that reason, we need not decide whether Wanda was authorized to reject coverage on Kathryn's behalf or address any remaining issues.

It has long been the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal unless the renewal document shows by clear and unambiguous terms that the parties' intent was not to make a new contract but to continue the original contract in force. *Great Am. Indem. Co. v. State*, 229 S.W.2d 850, 853 (Tex. Civ. App.—Austin 1950, writ ref'd). The commonly accepted definition of the term "renew" includes "to begin again," "to reestablish," "to recommence," "to resume," and "to replace." *Berry v. Texas Farm Bureau Mut. Ins. Co.*, 782 S.W.2d 246, 248 (Tex. App.—Waco 1989, writ denied) (quoting *Black's Law Dictionary* 1165 (5th ed. 1979). Unless the parties expressly state otherwise, a renewal constitutes a replacing of the old contract with a new contract for the term stated. *Berry*,782 S.W.2d at 248. The term "envisions the creation of something new with a nexus to the old." *Id.* The legislature provided that a written rejection of benefits executed in connection with one policy applies to a renewal policy. The term renewal policy does not include only a policy which extends the initial or original policy; it includes every new, separate, and distinct successive contract between parties connected in an unbroken chain of coverage back to the original or initial policy on which coverage was rejected. *Id.*

In a case very similar to the one before us, the court in *Berry* was called upon to decide whether the named insured's written rejection of uninsured motorist coverage made in

6

connection with one policy applied to a successive policy.[3]  The court held that by using the term "renewal policy" in the statute, the legislature intended the term to include a new contract between parties that replaces a preceding policy without a lapse of coverage.  Because the named insured had rejected coverage in connection with the issuance of the initial policy, the company was not required to provide uninsured motorist coverage in the later policy.  *Id.*

Appellants attempt to distinguish *Berry* on the basis that there "the contested policies of insurance were identical except for the numbers."  Our reading of the opinion does not reveal this fact or reflect that the court's holding turns on this fact.  Appellants argue that the Mid-Century policy cannot be considered a renewal of the Farmers policy because the Farmers policy insured Kathryn and her parents, while the Mid-Century policy insured only Kathryn.  As they argue, "From Wanda and Rodger Payne's perspective, the Mid-Century policy was no insurance at all."  Appellants do not address the summary judgment proof that identical coverage was provided Kathryn in an unbroken chain under the two policies.  They cite no authority for their assertion that a renewal policy must have identical parties and terms as the earlier policy.

The *Berry* opinion reflects that Berry was the named insured in an unbroken chain of automobile liability coverage policies, and that she executed a written rejection of benefits form initially but not in connection with the later policy in effect at the time of the incident giving rise to her claim.  The court held that each later policy created a new contract but that nevertheless each was

---

[3]  The statutory provision for rejecting uninsured/underinsured motorist coverage utilizes almost identical language as the PIP statute.  Tex. Ins. Code Ann. art. 5.06-1(1) (West 1981).

considered a renewal policy because it replaced the previous one in an unbroken chain, with no lapse in coverage, back to the one on which coverage was rejected. *Id.*.

Kathryn signed a written rejection of PIP in connection with a policy in which she was an insured named in the policy; she never requested PIP coverage; thereafter, an affiliated company issued her a policy in which she was the named insured; the new policy replaced the older one without a lapse of coverage. From Kathryn's perspective, the Mid-Century policy was a renewal policy.

We hold that under these facts, the Mid-Century policy was a renewal policy. Thus, Mid-Century was not required to provide PIP in its policy because Kathryn had rejected the coverage in writing in connection with the issuance of the Farmers policy, a policy previously issued to her by an affiliated insurer. For these reasons, the trial court did not err in granting summary judgment in favor of Mid-Century and in overruling appellants' motion.

We overrule the appellants' complaints on appeal and affirm the judgment.

_____

Marilyn Aboussie, Justice

Before Justice Kidd, B. A. Smith and Aboussie[*]

Affirmed

Filed:   August 29, 2003

[*]   Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

8