TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00205-CV






Ace Cash Express, Inc., Appellant



v.



Jeffrey D. Silverman and Morris Silverman, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN300997, HONORABLE JOHN K. DEITZ, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 This case involves construction of a contract, specifically, interpretation of the word
"and." Appellant Ace Cash Express, Inc. appeals an order granting appellees, Jeffrey D. Silverman
and Morris Silverman, summary judgment in a breach of contract action. The contract required the
"seller and shareholder" to indemnify the purchaser, Ace Cash Express, for losses resulting from
misrepresentations or breaches of warranties made by the "seller and shareholder." Ace Cash
Express sued the Silvermans claiming a breach of a seller warranty. The district court held that
"seller and shareholder" indemnified only against breaches of warranties or representations made
by both "seller and shareholder" and that the indemnity provision did not apply to breaches of
warranties or representations made solely by "seller." We will affirm the district court's summary
judgment.


Procedural and Factual Background


 This action arises out of an asset purchase agreement ("agreement") by which Ace
Cash Express purchased various assets relating to the check-cashing business of Valley Check
Cashiers, Inc., the seller. The seller and the Silvermans, who were the seller's shareholders, each
made certain representations and warranties as part of the agreement. Ace Cash Express alleged that
the seller breached these representations and warranties and sought indemnification from both seller
and the Silvermans amounting to $2.4 million.

 Article two of the agreement lists twenty-seven representations and warranties made
to Ace Cash Express by the seller. Section 2.8(a) reads, "Except as otherwise noted thereon, Seller
has good, merchantable title to all of the Assets, including but not limited to those properties and
assets described on Exhibit A." Section 2.8(b) reads, in part, "The assets are owned free and clear
of any lien, claim, or encumbrance." Section 2.12 represents that the real property leases that seller
was transferring to Ace Cash Express were "valid, binding, subsisting, and enforceable."

 Among the assets purchased by Ace Cash Express under this agreement was the
seller's interest in a lease allowing for the operation of check-cashing locations in eleven Handy
Andy grocery stores in San Antonio. Shortly after the closing of the sale, however, the largest
secured creditor of the owner of the Handy Andy stores foreclosed upon the owner's assets and sent
an eviction notice informing the seller that Ace Cash Express could no longer operate check-cashing
locations within the stores. Ace Cash Express brought suit seeking the right to continue operating
the check-cashing locations in Bexar County district court. The district court ruled that the Handy
Andy lease rights were invalid and ordered Ace Cash Express to vacate the stores.

 Ace Cash Express then sought indemnification under section 5.1 of the agreement
and, having been rebuked by the seller and by the Silvermans, brought the suit that is the source of
the instant controversy. Section 5.1 of the agreement reads, 



"Seller and Shareholder shall jointly and severally indemnify and hold Purchaser
. . . harmless from and against any and all losses . . . asserted against Purchaser . . .
resulting from or arising out of or in connection with (a) any material
misrepresentation or breach by Seller and Shareholder of any warranty, agreement,
or covenant contained in this Agreement or any other document executed, delivered
or furnished by Seller and Shareholder in connection herewith . . . ."



 The district court accepted the Silvermans' position that the meaning of "seller and
shareholder" in section 5.1 of the agreement is that the indemnity provision applies only to a breach
of a representation or warranty made by both the seller and the Silvermans as opposed to a
representation made by only one of them. Reading the word "and" strictly in the conjunctive results
in an indemnity requirement only for breaches of joint warranties. Because the representations in
article two of the agreement that were breached were made on behalf of the seller, but not the
shareholders, under the district court's interpretation no indemnity is owed by the Silvermans under
section 5.1 of the agreement.

 Having held that the indemnity provision of section 5.1 did not apply to the seller's
representations and warranties allegedly breached, the district court granted summary judgment to
the Silvermans on the claims asserted against them as the shareholders and severed the surviving
claims against seller, Valley Check Cashiers, Inc., making the summary judgment final and
appealable.

Standard of Review

 A trial court's decision to grant or deny a motion for summary judgment is a question
of law, and thus we review that decision de novo. See Reagan Nat'l. Adver. of Austin, Inc. v. Capital
Outdoors, Inc., 96 S.W.3d 490, 493 (Tex. App.--Austin 2002, pet. denied). The movant must show
that (1) there is no genuine issue of material fact and (2) it is entitled to judgment as a matter of law. 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The construction and legal
effect of a contract are determined by the court as a matter of law, in the absence of an issue of fact. 
American Mfrs. Mut. Ins. Co. v. Schaefer, 47 Tex. Sup. Ct. J. 40, 2003 Tex. LEXIS 472 (Oct. 17,
2003); Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). Where, as
here, the issues raised are based upon undisputed facts, the reviewing court may determine the
questions presented as a matter of law. McCreight v. City of Cleburne, 940 S.W.2d 285, 288 (Tex.
App.--Waco 1997, writ denied). 


Analysis Ace Cash Express urges that the "and" in "seller and shareholder" should be
construed in section 5.1 of the agreement as having a meaning similar to "or" so that a breach of a
warranty by either party triggers the indemnity provision with respect to both. Ace Cash Express
argues that only this interpretation gives meaning to the intent of the parties and to the twenty-seven
warranties in article two of the agreement. 

 Citing Alexander v. State, appellant urges that the terms "and" and "or" are "mere
colorless particles that derive their meaning or force from what comes before or after." 204 S.W.
644, 646 (Tex. Crim. App. 1918). Alexander, however, involves statutory interpretation, and the
Court of Criminal Appeals rationalized its approach based upon prior judicial interpretation of the
usage of the "and" and "or" in specific statutes, including usage of the terms in the state constitution. 
Id. Indeed, Ace Cash Express correctly identifies a number of Texas cases in which "and" and "or"
have been loosely construed when dealing with statutes or rules. See, e.g., Witherspoon v. Jernigan,
76 S.W. 445, 447 (Tex. 1903) (construing statute); Blocher v. McArthur, 303 S.W.2d 529, 531 (Tex.
Civ. App.--Austin 1957, writ ref'd n.r.e.) (construing rule of civil procedure). The current case is
distinguishable in that we are asked to interpret a contract written by the parties themselves. Judicial
interpretation of a statute, particularly when based upon past interpretation, is an entirely different
endeavor than that of construing a contract.

 The fundamental rules of construction dictate that in construing a written contract,
the primary concern of the court is to ascertain the true intentions of the parties as expressed in the
instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); R & P Enters. v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980); City of Pinehurst v. Spooner Addition Water Co.,
432 S.W.2d 515, 518 (Tex. 1968). To achieve this objective, courts should examine and consider
the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that
none will be rendered meaningless. Coker, 650 S.W.2d at 393; Universal C.I.T. Credit Corp. v.
Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be given controlling
effect; rather, all the provisions must be considered with reference to the whole instrument. Coker,
650 S.W.2d at 393. 

 Normally, the words "and" and "or" are not interchangeable terms but are used for
purposes entirely different, the former being strictly of a conjunctive nature and the latter being of
a disjunctive nature. American Nat'l. Ins. Co. v. Wilson State Bank, 480 S.W.2d 296, 300 (Tex. Civ.
App.--Amarillo 1972, no writ). 


"Interpreting 'and' to mean 'or' is never resorted to except for strong reasons and the
words should never be so construed unless the context favors the conversion; as
where it must be done in order to effectuate the manifest intention of the user, and
where not to do so would render the meaning ambiguous, or result in an absurdity or
would be tantamount to a refusal to correct a mistake." Board of Ins. Comm'rs v.
Guardian Life Ins. Co., 180 S.W.2d 906, 908 (Tex. 1944). 



The language used by the parties in a contract should be accorded its plain grammatical meaning
unless it definitely appears that the intention of the parties would thereby be defeated. Lyons v.
Montgomery, 701 S.W.2d 641, 643 (Tex. 1985); Fox v. Thoreson, 398 S.W.2d 88, 92 (Tex. 1966). 
Our primary goal in interpreting a contract is to give effect to the intent of the parties as expressed
in the agreement itself, not from the parties' present interpretation. First State Bank v. Keilman, 851
S.W.2d 914, 922 (Tex. App.--Austin 1993, writ denied).

 Accordingly, we must first determine whether declining to interpret the agreement
as Ace Cash Express urges would render the meaning ambiguous or result in an absurdity. Whether
a contract is ambiguous is a question of law for the court to decide. Gulf Ins. Co. v. Burns Motors,
Inc., 22 S.W.3d 417, 424 (Tex. 2000). If the written instrument is so worded that it can be given a
certain or definite legal meaning or interpretation, then it is not ambiguous and the court will
construe the contract as a matter of law. Coker, 650 S.W.2d at 393; Universal C.I.T. Credit Corp.,
243 S.W.2d at 157; Old Am. County Mut. Fire Ins. Co. v. Sanchez, 81 S.W.3d 452, 456 (Tex.
App.--Austin 2002, no pet.). A contract is ambiguous when, after the application of established
rules of construction, its meaning remains uncertain and doubtful or is reasonably susceptible to
more than one meaning. DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999);
Coker, 650 S.W.2d at 393; Skelly Oil Co. v. Archer, 356 S.W.2d 774, 778 (Tex. 1962). An
ambiguity does not arise simply because the parties offer conflicting interpretations. Kelley-Coppedge, 980 S.W.2d at 465; see also Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458
(Tex. 1997). When a contract contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the instrument becomes a fact issue. Coker, 650
S.W.2d at 393; see also Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980).

 Interpreting "and" in section 5.1 of the agreement in its traditional, conjunctive
meaning would not create an ambiguity. It is undisputed that if so interpreted, the indemnity
provision does not apply to breaches of individual warranties. This is a "clear and definite" meaning
derived from the plain language of the agreement. Further, the word "and" has a conjunctive
meaning, and in light of the many uses of "Seller or Shareholder" and "Shareholder and/or Seller"
in the agreement, it seems that the parties understood the meanings of each at the time the contract
was executed. Considering the entire agreement, including the parties' frequent use of "and/or" and
"or," we conclude that the parties intended to use "and" to signify the conjunctive.

 Ace Cash Express urges that we consider summary judgment evidence in the form
of an affidavit suggesting that the agreement would have never been signed if the indemnity
provision only applied to joint warranties. Consistent with the parol evidence rule, we cannot
consider extrinsic evidence of the intent of the parties unless the intent cannot be derived from within
the four corners of the contract itself. National Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517,
520 (Tex. 1995); Litton v. Hanley, 823 S.W.2d 428, 431 (Tex. App.--Houston [1st Dist.] 1992, no
pet.); Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex., 208 F.3d 475, 485 (5th Cir. 2000);
In re Conte, 206 F.3d 536, 538 (5th Cir. 2000). 

 We therefore conclude that the agreement and the intent of the parties as indicated
by the express terms of the agreement, when construed according to the rules of contract
construction, were not ambiguous as a matter of law. Rather, the unambiguous intent of the parties
was to impose joint and several liability under the indemnity provision on both the seller and the
Silvermans for breaches of representations or warranties made by both the seller and by the
Silvermans, but not to do so for breach of warranties made solely by the seller.

 Where the intent of the parties is clearly expressed within the four corners of the
contract, we may depart from the meaning of the terms chosen by the parties if such a departure is
necessary in order to avoid an absurd result. Board of Ins. Comm'rs, 180 S.W.2d at 908. Such a
situation arises where reading "and" as a conjunctive would render the provision meaningless or
would create a paradox that could not have been the substance of the bargain. 

 In Aerospatiale Helicopter Corp. v. Universal Health Services., Inc., the term "and"
was construed to mean "or" where a conjunctive reading of "and" would have resulted in liability
only when a loss occurred both while a helicopter was "in use or operation" and during installation
or removal of equipment. 778 S.W.2d 492, 501 (Tex. App.--Dallas 1989, writ denied). Because 
flying a helicopter and installing equipment rarely occur simultaneously, giving "and" its conjunctive
meaning in Aerospatiale would have rendered the provision meaningless and defied common sense. 
Id.

 In this case, however, giving "and" its conjunctive meaning in section 5.1 of the
agreement clearly results in a joint indemnity by the seller and by the Silvermans for any breach of
a joint warranty. Under this construction, regardless of the assets of each, both parties are jointly and
severally responsible for holding Ace Cash Express harmless from losses or expenses resulting from
their joint breach. Although the express language of the provision does not impose liability on the
Silvermans for breaches of individual warranties of the seller and vice-versa, it is not absurd to
conclude that the parties intended joint liability only for breaches of joint warranties.

 Ace Cash Express further argues that there are only warranties made by the seller as
an individual under article 2 of the agreement and that therefore the indemnity clause is meaningless
if construed as applying only to joint warranties. Although the literal conjunctive interpretation of
"and" does not provide for indemnity coverage for article 2 warranties, it does cover other significant
joint representations such as section 4.2, where the seller and the Silvermans jointly agree to neither
compete with Ace Cash Express nor solicit its employees, and section 4.8, where both the seller and
the Silvermans agree not to impair the business.

 Ace Cash Express urges that section 5.1 is simply a reciprocal indemnity from the
seller and the Silvermans to Ace Cash Express and was intended to be symmetrical to section 5.2. 
Section 5.2 provides an indemnity from Ace Cash Express to the seller and the Silvermans for losses
resulting from "any misrepresentation or breach by [p]urchaser of any warranty, agreement or
covenant contained in this [a]greement." Ace Cash Express argues that 5.2 is indicative of the
symmetry intended in section 5.1 and that section 5.1 should thus be interpreted to give effect to that
symmetry. This would result in the section 5.1 indemnity being construed to apply to breaches of
the seller's article 2 warranties just as the plain language of section 5.2 indemnity indicates that it
applies to the Ace Cash Express's article 3 warranties.

 It is true that section 5.2 does apply to Ace Cash Express's warranties in article 3 of
the agreement and section 5.1, when "and" is given a conjunctive meaning, does not in turn apply
to the seller's article 2 warranties. We cannot, however, conclude that this was not an intentional
and reasonable distinction. Article 2 contains a long list of substantive warranties relating to
employee-benefit plans, leases, litigation, condition of the assets, taxes, intellectual property, etc.,
any one of which might have involved substantial risk and liability. Article 3, on the other hand,
simply indicates that Ace Cash Express has the authority to enter into the transaction, has complied
with applicable laws, and is not in conflict with other agreements that Ace Cash Express has
executed. It is not unreasonable to suggest that the varying scope of the warranties might have led
the parties to contract for varying liability for their breach and, accordingly, reading it as such does
not lead to an absurd result. 

 Additionally, we note authority indicating that, when applying an indemnity provision
after the intent of the parties has been determined, the indemnitor is entitled to have the provision
strictly construed in its favor, thereby preventing liability from being extended beyond the terms of
the agreement. See Ohio Oil Co. v. Smith, 365 S.W.2d 621, 627 (Tex. 1963), overruled on other
grounds, Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705 (Tex. 1987); Sun Oil Co. v. Renshaw
Well Serv., Inc., 571 S.W.2d 64, 68 (Tex. Civ. App.--Tyler 1978, writ ref'd n.r.e.); Hudson v.
Hinton, 435 S.W.2d 211, 214 (Tex. Civ. App.--Dallas 1968, no writ).

 In this case, strict construction of section 5.1 of the agreement in favor of the
indemnitor, the Silvermans, results in the adoption of the meaning that limits the scope of the
indemnity provision. This also results in the attribution of a conjunctive meaning to "and" in "seller
and shareholder" in section 5.1 and, accordingly, no liability for the Silvermans for breaches of
seller's article 2 warranties. 


Conclusion

 We conclude that the term "seller and shareholder" in section 5.1 of the agreement
means that the indemnity provision applies only to breach of a representation or warranty made by
both the seller and by the Silvermans. This is the literal meaning of the express language of the
agreement. We are able to assign a definite and certain meaning to the words chosen by the parties
and, accordingly, we construe the contract as a matter of law. Coker, 650 S.W.2d at 393; Universal
C.I.T. Credit Corp., 243 S.W.2d at 157; Old Am. County Mut. Fire Ins. Co., 81 S.W.3d at 456. 
Because the facts are undisputed and the only question presented is the construction of the
agreement, which is a question of law on which we find in favor of the Silvermans, summary
judgment is appropriate. Nixon, 690 S.W.2d at 548-49; McCreight, 940 S.W.2d at 288. 
Accordingly, the summary judgment of the district court is affirmed.



 ___________________________________________

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: January 23, 2004