**Patsy R. POTEET, Appellant,**

v.

**STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY and Ken Waggonner d/b/a Ken Waggonner Insurance Agency, Appellees.**

No. 11–98–00251–CV.

Court of Appeals of Texas, Eastland.

Oct. 28, 1999.

Jeff Bates, Bates & Hoyt, Lufkin, for appellant.

Curtis W. (Curt) Fenley, III, James Anthony Bufkin, Fenley & Bate, Cary D. Kirby, Lufkin, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

Patsy R. Poteet appeals a declaratory judgment in favor of State and County Mutual Fire Insurance Company (State and County) and Ken Waggonner d/b/a Ken Waggonner Insurance Agency. The trial court declared that no uninsured/underinsured motorist (UM/UIM) coverage existed under an automobile liability insurance policy issued to Poteet's sister and brother-in-law, Carolyn and John Ralph Goodwin. We affirm.

### Background Facts

The parties entered stipulations in the trial court for purposes of the declaratory judgment. John Ralph Goodwin applied for an automobile liability insurance policy from Ken Waggonner Insurance on November 23, 1994. Ralph's wife, Carolyn, was living in the same household on that date. Also on that date, Ralph executed a written rejection of UM/UIM coverage. State and County issued Policy No. TPD160179, without UM/UIM coverage, effective from December 2, 1994, to March 2, 1995. Ralph renewed the policy on March 2, 1995, as Policy No. TPD160179-01, without requesting the addition of UM/UIM coverage.

Ralph died on March 26, 1995; Carolyn was living in the same household on that

date as well.[1] Carolyn paid the premiums and renewed the policy on June 2, 1995, as Policy No. TPD160179-02. Carolyn did not request the addition of UM/UIM coverage to the policy, but she did not sign a written rejection of the coverage either. On June 4, 1995, Patsy was in a collision with Lyle Henry Boyea, an uninsured or underinsured motorist. Patsy was driving Carolyn's car. State and County denied UM/UIM coverage for Patsy. Patsy filed suit against State and County and Ken Waggonner Insurance Agency, and both defendants filed for a declaratory judgment that no coverage existed under the policy.

### Point of Error

The trial court entered a declaratory judgment for State and County and Ken Waggonner Insurance. The trial court concluded that:

1. The Policy issued to JOHN RALPH GOODWIN was not cancelled by the death of JOHN RALPH GOODWIN and was in effect on June 4, 1995, the date of the incident made the basis of this lawsuit.

2. The Policy did not contain uninsured/underinsured motorist coverage, such coverage having been specifically rejected in writing by JOHN RALPH GOODWIN in his original application for insurance.

In her only point of error, Patsy argues that the trial court erred in granting a declaratory judgment because Ralph's rejection of UM/UIM coverage was ineffective as to the subsequent renewal of the policy by Carolyn. We may uphold the trial court's conclusion of law if it can be sustained under any legal theory supported by the evidence. *Truck Insurance Exchange v. Musick*, 902 S.W.2d 68, 69 (Tex.App.—Fort Worth 1995, writ den'd).

---

1. Ken Waggonner testified in his deposition that he informed State and County of Ralph's death on or about May 1, 1995. State and County denied receiving notice of the death prior to Poteet's accident. The point is immaterial to our decision.

*The Law*

The Insurance Code provides that:

No automobile liability insurance ... shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles. [Coverage for uninsured/underinsured motor vehicles is not required] where any insured named in the policy shall reject the coverage in writing; *provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy* where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer. (Emphasis added)

TEX. INS. CODE ANN. art. 5.06–1(1) (Vernon 1981).

Patsy argues that Article 5.06–1(1) expresses the public policy of the State that every automobile liability insurance policy should have UM/UIM coverage, subject to a very limited exception. Patsy relies largely on *Howard v. INA County Mutual Insurance Company*, 933 S.W.2d 212, 218 (Tex.App.—Dallas 1996, writ den'd). The issue in *Howard*, however, was whether an insured could retroactively reject UM/ UIM coverage. The Dallas Court held that retroactive rejection of the coverage by reformation of the insurance contract was ineffective because it was contrary to public policy and the statute. *Howard v. INA County Mutual Insurance Company, supra* at 220. That case is inapposite here because this case involves quite a different issue.

The issue here is whether the June 2, 1995, policy was a "renewal" of the original policy within the meaning of that term in Article 5.06–1(1). The Waco Court considered a similar situation in *Berry v. Texas Farm Bureau Mutual Insurance Company*, 782 S.W.2d 246 (Tex.App.—Waco 1989,

writ den'd). In *Berry*, the wife purchased an automobile liability insurance policy and rejected UM/UIM coverage. The term of the policy was a year; and, for two successive years thereafter, the wife "renewed" the coverage. The first time she renewed it, she signed an application and another UM/UIM rejection. The second time, she signed nothing; but the insurer nevertheless issued another policy to her. The insurer denied coverage after the wife and her husband were injured by an UM/UIM. The husband and wife sued on the policy, and the insurer won a summary judgment. On appeal, the husband and wife argued that a fact issue existed as to whether there was UM/UIM coverage under the third policy.

The Waco Court analyzed whether the third policy was a completely new contract between the wife and the insurer or whether it was a "renewal" under Article 5.06–1(1). Unless it was a new contract, the wife's previous rejection of UM/UIM coverage was sufficient to reject the coverage under the third policy. *Berry v. Texas Farm Bureau Mutual Insurance Company, supra* at 249. The court looked at the definition of "renewal policy" that existed when the legislature enacted Article 5.06–1(1) and noted that:

Since 1950 ... the law relating to the renewal of insurance contracts was as follows:

It is the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal, *except where the provisions of the extension certificate show that the purpose and intention of the parties was not to make a new contract but was to continue the original contract in force....And* "such limitation must be found in clear and unambiguous terms within the four corners of the certificate. (Emphasis in original)

*Berry v. Texas Farm Bureau Mutual Insurance Company, supra* at 247–48, quoting *Great American Indemnity Co. v.*

*State,* 229 S.W.2d 850, 853 (Tex.Civ.App.—Austin 1950, writ ref'd). Thus, unless otherwise indicated, each successive contract between an insurer and an insured is a "new, separate, and distinct contract." *Berry v. Texas Farm Bureau Mutual Insurance Company, supra* at 248.

The court stated the issue as to whether the legislature intended:

> [T]o require a written rejection of uninsured motorist coverage on every new, separate and distinct contract between the parties, although each successive policy is connected in an unbroken chain of coverage back to the original or initial policy on which uninsured motorist coverage was rejected?

*Berry v. Texas Farm Bureau Mutual Insurance Company, supra.* The court answered in the negative holding that, although the third policy was a new contract between the insurer and the wife, the legislature knew of the rule stated in *Great American Indemnity Co.* when it enacted Article 5.06–1(1) and that the term "renewal policy" includes "new contracts that 'begin again,' 'recommence,' 'resume,' 're-establish,' 'recreate,' and 'replace' a preceding policy without a lapse of coverage." *Berry v. Texas Farm Bureau Mutual Insurance Company, supra* at 249.[2]

### The Result

The policy in question provides that, if the named insured (in this case, Ralph) dies, the coverage will extend to the "surviving spouse [Carolyn] if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations." The coverage for the surviving spouse is effective "until the end of the policy period." The policy also provided that State and County had the right not to renew it or not to continue it only on the "anniversary of its original effective date."[3] The Goodwins paid for the policy on a quarterly schedule; thus, the policy period would be three months if the renewal premium was not paid, but it would be a year if all the premiums were paid. There is a difference between cancellation of coverage by the insurer and expiration under the terms of the policy or termination of coverage by the insured. *Longoria v. Greyhound Lines, Inc.,* 699 S.W.2d 298, 304 (Tex.App.—San Antonio 1985, no writ).

The original and renewal declaration pages issued to the Goodwins, including the declaration page issued on June 2, 1995, all list "John Ralph Goodwin" as the "named insured." All of the declaration pages bear the same policy number, except that the two renewals include the suffixes "-01" and "-02" respectively. All of the declaration pages have the same limits of liability listed; and all of them, including the declaration page issued on June 2, 1995, list ",000" as the limit for UM/UIM coverage. Carolyn's name does not appear on any of the declaration pages. The declaration pages contain no language that indicates that the parties were not entering into a new contract.

This case is similar to *Berry* in that the series of new contracts forms an unbroken chain of coverage. The circumstances of this case are even more compelling; *Berry* involved three different policies with three different policy numbers. Clearly, the policy here was renewable every three months, contingent only upon the payment of the premium by the Goodwins. State and County was obligated to renew the original policy it issued to the Goodwins until the end of the policy period. Following Ralph's death, State and County was

---

**2.** The Berrys conceded that there was no lapse of coverage between the first, second, and third policies. *Berry v. Texas Farm Bureau Mutual Insurance Company, supra* at 248.

**3.** The "Consumer Bill of Rights for Personal Automobile Insurance," furnished to the Goodwins with a copy of the original policy, states that, under the Texas Department of Insurance regulations, State and County cannot refuse to renew a policy until it has been in effect for one year and cannot refuse to renew a policy except on each anniversary of the policy. By its terms, however, the Bill of Rights is not a part of the insurance contract.

also obligated to continue coverage under the policy for Carolyn for the policy period. The policy period was one year, unless the Goodwins chose not to pay the premiums and allowed coverage to lapse. Ralph's death did not cancel the policy nor did his death somehow end the chain of coverage. The policy here is a "renewal policy" as that term is used in Article 5.06–1(1). Because Ralph rejected UM/UIM coverage "in connection with a policy previously issued to him by the same insurer," that rejection was effective as to subsequent renewals of the policy.

We hold that the trial court did not err by entering a declaratory judgment in favor of State and County and Ken Waggonner d/b/a Ken Waggonner Insurance Agency.

*This Court's Ruling*

We affirm the trial court's judgment.