**OLD AMERICAN COUNTY MUTUAL FIRE INSURANCE COMPANY, Petitioner,**

v.

**Zeferino SANCHEZ, Respondent.**

No. 02–0843.

Supreme Court of Texas.

Argued Feb. 11, 2004.

Decided Oct. 22, 2004.

Robert Harrison Pemberton, Shannon H. Ratliff, Ratliff Law Firm, P.L.L.C., James J. Scheske, Christopher Harris Taylor, Akin Gump Strauss Hauer & Feld LLP, Austin, Barry A. Chasnoff, Akin Gump Strauss Hauer & Feld LLP, San Antonio, for petitioner.

Glynn C. Turquand, Walters & Turquand, Charles C. Sanders, Austin, for respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

Articles 5.06–1(1) and 5.06–3(a) of the Texas Insurance Code ("the Code") provide that "any insured named in the policy" may reject Uninsured Motorist ("UM") and Personal Injury Protection ("PIP") coverages. The question here is whether the insured spouse of the person listed as the "named insured" in the declarations page of a policy may reject those coverages. The court of appeals held that the spouse could not. We conclude, however, that the spouse falls within the class of persons statutorily entitled to reject UM and PIP coverages under the policy. Ac-

cordingly, we reverse the court of appeals' judgment and render judgment in favor of Old American County Mutual Fire Insurance Company ("Old American").

# I

## Factual Background

This case is presented on stipulated facts.[1] On January 8, 1998, Margarita Sanchez, wife of Zeferino Sanchez, applied for and purchased an insurance policy from Old American for two of the couple's vehicles. Ms. Sanchez rejected UM and PIP coverages on the insurance application, and Old American never assessed premiums for the coverages.[2] In applying for the policy, Ms. Sanchez affirmed that the rejections of UM and PIP coverages would apply to the 1998 policy and to all future renewals of that policy. The Sanchezes renewed their existing policy in 1999. Neither Mr. nor Ms. Sanchez requested PIP or UM coverages at that time.

Although Ms. Sanchez's name appeared on the 1998 policy application, she was not listed as a "named insured" on the declarations page.[3] The policy, however, defined "you" and "your" (i.e., the insureds under the policy) to include the "named insured" as well as "[t]he spouse if a resident of the same household." Ms. Sanchez fell within the policy definitions of "you" and "your" because she and Mr. Sanchez lived in the same house at all pertinent times. To that end, the parties stipulated that both Mr. and Ms. Sanchez were insured under the policy. The parties disagree, however,

about the extent of the policy's coverage. Specifically, the parties dispute whether Mr. Sanchez was entitled to UM and PIP benefits to cover damages arising from a 1999 accident.

On April 11, 1999, Mr. Sanchez's 1984 Chevrolet pickup truck was parked on the shoulder of Interstate 35 in Hays County. A vehicle driven by an uninsured motorist struck Mr. Sanchez's truck as he was lying beneath it repairing a broken fuel hose. The impact caused the pickup to collapse on Mr. Sanchez and sever his spinal cord. Although Mr. Sanchez owned the pickup truck at the time Ms. Sanchez applied for the policy, Ms. Sanchez did not identify the pickup in the application and it was not a "covered auto" under the policy. The policy's UM and PIP provisions excluded coverage for injuries sustained while "occupying" or when "struck by" any vehicle owned by an insured that was not insured under the policy (i.e., the "owned-vehicle exclusion").

# II

## Procedural Background

After the 1999 accident, Mr. Sanchez filed a claim with Old American for UM and PIP benefits under the policy. Old American filed suit seeking a declaratory judgment absolving it of any obligation to pay those benefits. It then moved for summary judgment on three grounds: (i) Ms. Sanchez's rejection of UM and PIP coverages precluded Mr. Sanchez's recovery of those benefits; (ii) the policy's

---

1. In the trial court, the parties filed Agreed Stipulations, which Old American relied on in its motion for summary judgment. See Tex.R. Civ. P. 166a(c).

2. Ms. Sanchez also rejected underinsured motorist ("UIM") coverage, but that rejection is not at issue in this case.

3. The declarations page of a policy generally "states the parties to the contract, the policy period, the amount of insurance for each coverage (Limits of Liability), the premium charges, and the person or property insured." 1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance, 2D § 4.4 (1996).

owned-vehicle exclusion eliminated UM and PIP coverages because Mr. Sanchez sustained his injuries while "upon" and thus "occupying" the uncovered pickup; and (iii) Mr. Sanchez was "struck by" the uncovered pickup, which also invoked the UM and PIP owned-vehicle exclusion. The trial court denied summary judgment on the first ground, granted summary judgment for Old American on the second ground, and did not rule on the third. Mr. Sanchez appealed the trial court's judgment, and Old American cross-appealed, contending that it was also entitled to summary judgment on the first and third grounds.

The court of appeals held that Old American was not entitled to summary judgment on any of the asserted grounds and remanded to the trial court for further proceedings. 81 S.W.3d 452, 462–63. As to the first ground, the court held that Ms. Sanchez was not: (i) a "named insured" because her name was not listed on the declarations page of the policy, or (ii) an "insured named in the policy" with authority to reject coverages because she was not explicitly named in the policy. *Id.* at 459–60 & n. 8. As to the second and third grounds, the court held that Mr. Sanchez was neither "occupying" nor "struck by" his truck in the accident that gave rise to this suit. *Id.* at 458, 462.

We granted Old American's petition for review. 47 Tex. Sup.Ct. J. 2 (Oct. 3, 2003). Because we conclude that Old American was entitled to summary judgment on the first ground, we do not reach the other two grounds asserted by the parties in this case.

### III

### Discussion

The parties do not dispute that Ms. Sanchez rejected UM and PIP coverages in writing; they do not assert that there were any formal defects with the manner or form of rejection; and they agree that premiums were never assessed for the coverages. The only issue is whether Ms. Sanchez had statutory authority to waive them. To resolve this issue, we must determine whether, under articles 5.06–1(1) and 5.06–3(a) of the Texas Insurance Code, the spouse of the person identified as the named insured in the declarations page of a policy may reject UM and PIP coverages. The parties assert, and we agree, that this is a legal question with no genuine issues of material fact.

### A

Articles 5.06–1(1) and 5.06–3(a) of the Code mandate UM and PIP coverages in Texas automobile liability insurance policies, unless those coverages are explicitly waived. *See* Tex. Ins.Code arts. 5.06–1(1), 5.06–3(a). Specifically, article 5.06–1(1) of the Texas Insurance Code states:

No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this Article shall not be applicable where *any insured*

*named in the policy* shall reject the coverage in writing; provided that unless *the named insured* thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where *the named insured* has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

*Id.* art. 5.06–1(1) (emphasis added).

Similarly, article 5.06–3(a) reads as follows:

No automobile liability insurance policy, including insurance issued pursuant to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. The coverage required by this article shall not be applicable if *any insured named in the policy* shall reject the coverage in writing; provided, unless *the named insured* thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy if *the named insured* has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

*Id.* art. 5.06–3(a) (emphasis added).

■ The UM and PIP statutes are remedial in nature. The UM statute is designed to compensate insured persons who are legally entitled to recover damages from uninsured persons who cause motor vehicle accidents. *Id.* art. 5.06–1(1); *see* 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 122:2 (1997) [hereinafter Couch]. UM coverage essentially enables a victim of a motor vehicle accident to recover from his or her insurer the amount, up to policy limits, the victim would have been able to collect from the person who caused the accident had that person been insured. *See* Tex. Ins.Code art. 5.06–1(5); *Mid–Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 272 (Tex. 1999); *see* 9 Couch at § 122:1. The PIP statute is intended to provide no-fault compensation for victims of motor vehicle accidents. Tex. Ins.Code art. 5.06–3(c); *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock,* 146 S.W.3d 123 (Tex.2004); *see* 9 Couch at § 125:1. Generally, PIP coverage requires the insurer, regardless of legal fault, to pay the insured an amount up to $2,500 to cover loss of income and medical expenses arising from accidents. Tex. Ins.Code art. 5.06–3(b); *see* 9 Couch at § 125:2.

■ This Court has recognized that, because of their remedial purposes, articles 5.06–1(1) and 5.06–3(a) should be liberally interpreted to give effect to the public policy that led to their enactment. *See Sturrock,* 146 S.W.3d at 128; *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 382 (Tex.1989); *see also Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d 303, 308 (Tex. 1978); 9 Couch at §§ 122:7, 122:39, 125:16. Nevertheless, because we presume that every word of a statute has been included or excluded for a reason, we will not insert requirements that are not provided by law. *See In re Bell,* 91 S.W.3d 784, 790 (Tex. 2002) (citations omitted); *see also* 8 John Allen & Jean Appleman, Insurance Law and Practice §§ 5073, 5163 (1981 & Supp. 2003).

Articles 5.06–1(1) and 5.06–3(1) contain two pertinent phrases regarding who may reject UM and PIP coverages: (1) "any insured named in the policy," and (2) "the named insured." *See* Tex. Ins.Code arts. 5.06–1(1), 5.06–3(a). Old American argues that "any insured named in the policy" is broader than "the named insured," which

is a term of art referring to those persons listed as such in the declarations page of the policy. Mr. Sanchez asserts that the phrases are the same or, in the alternative, that even if the phrases are different, Old American still did not have a valid rejection of coverages in the renewal policy because only "the named insured" is authorized to reject coverages therein. The court of appeals accepted Old American's assertion that "named insured," unlike "insured named in the policy," is a term of art referring "specifically to the insured listed on the declarations page of the insurance policy." 81 S.W.3d at 459 (citing Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 4.3 (2d ed. 1999)). It further held that Ms. Sanchez did not qualify as an "insured named in the policy," because she was not explicitly named in the policy. *Id.* at 460.

The dispute thus turns on the proper meaning of the statutory phrases "any insured in the policy" and "the named insured," which both denote the class of persons entitled to reject UM and PIP coverages under articles 5.06–1(1) and 5.06–3(a). *See* Tex. Ins.Code arts. 5.06–1(1), 5.06–3(a). The Code does not provide a general definition for "named insured" in the context of automobile insurance.[4] The phrase "any insured named in the policy" is also undefined and appears only twice within the entire Code—in articles 5.06–1(1) and 5.06–3(a). *Id.* arts. 5.06–1(1), 5.06–3(a). Because the Legislature used both phrases to identify the same thing (*i.e.,* the class of persons entitled to reject UM and PIP coverages), we must initially determine what, if anything, the Legislature intended by using different language. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 77 S.W.3d 253,

260 (Tex.2002) (noting that primary objective in construing statute is to determine and give effect to Legislature's intent); *see also Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000).

**B**

When analyzing chapter 5 as a whole, it becomes apparent that, aside from the articles "any" and "the," the Legislature intended to equate the phrase "any insured named in the policy" with "the named insured." Article 5.06 states that "[e]ach policy form must provide the coverages mandated under Articles 5.06–1 and 5.06–3 of this code, *except that the coverages may be rejected by the named insured as provided by those articles.*" *Id.* art. 5.06(1) (as amended by Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 2.07, 1991 Tex. Gen. Laws 956) (emphasis added). Similarly, article 5.145 states that "[e]ach form for a policy of personal automobile insurance must provide the coverages as mandated under Articles 5.06–1 and 5.06–3 of this code *unless the coverages are rejected by the named insured in the manner provided by those articles.*" *Id.* art. 5.145(3)(b) (added by Act of June 2, 2003, 78th Leg., ch. 206, § 2.01, 2003 Tex. Gen. Laws 916) (emphasis added).

It is not automatically clear why the Legislature used the phrase "*the* named insured" in articles 5.06 and 5.145 when it specifically allowed "*any* insured named in the policy" to reject UM and PIP coverages in articles 5.06–1(1) and 5.06–3(a). *See* Tex. Ins.Code arts. 5.06, 5.06–1(1), 5.06–3(a), 5.145 (emphasis added). However, an analysis of legislative history indicates that the Legislature did not intend to overlay

---

**4.** *But see* Tex. Ins.Code art. 5.06–5(a) (providing section-specific definition of "named insured" that incorporates the named insured's

spouse when policy is written on an individual).

the more restrictive word "the" in articles 5.06 and 5.145 onto articles 5.06–1(1) and 5.06–3(a). The bill that later became article 5.06–1(1) was initially introduced as permitting only "*the* named insured" to reject UM coverage; however, it was later broadened to include the current phrase "*any* insured named in the policy." Tex. S.B. 219, 60th Leg., R.S. (1967) (bill file) (available from the Texas State Library and Archives Commission) (emphasis added). Similarly, article 5.06–3(a) initially limited rejection of PIP coverage to "*the* insured named in the policy," but the Legislature later broadened it to empower "*any* insured named in the policy" to reject coverage. Tex. Ins.Code art. 5.06–3(a) historical note [Act of Aug. 31, 1981, 67th Leg., R.S., ch. 51, § 1, 1981 Tex. Gen. Laws 100] (emphasis added). Considering this legislative history coupled with the Legislature's decision not to amend the broader phrases in articles 5.06–1(1) and 5.06–3(a) when it amended and added articles 5.06 and 5.145 respectively, we conclude that the Legislature intended to allow *any* named insured to reject UM and PIP coverages under articles 5.06–1 and 5.06–3. In sum, aside from the articles "any" and "the," the Legislature has equated "any insured named in the policy" with "the named insured" in articles 5.06–1(1) and 5.06–3(a).

Moreover, the phrases "insured named in the policy" and "named insured" must be equivalent because to conclude otherwise would lead to an unreasonable result. *See* Tex. Gov't Code § 311.021(3). Both articles 5.06–1(1) and 5.06–3(a) state that a valid rejection of UM and PIP coverage occurs when an "insured named in the policy" rejects the coverage in writing. Tex. Ins.Code arts. 5.06–1(1), 5.06–3(a).

The rejection language in each article, however, is qualified with the following: "unless the *named insured* thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where[5] the *named insured* has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer." *Id.* arts. 5.06–1(1), 5.06–3(a) (emphasis added). If the phrase "insured named in the policy" meant something different than "named insured," the effect of a policy renewal would vary depending on who initially rejected UM and PIP coverages. For example, if a "named insured" initially rejected coverages, the renewal policy would not have to include coverages unless the "named insured" requested them in writing; however, if "any insured named in the policy" initially rejected coverages, the renewal policy would potentially include coverages even if not requested. We can find no apparent justification for such a distinction. Working with the presumption that the Legislature intended a reasonable result, and analyzing the statutes as a whole rather than focusing on isolated provisions, we reject the contention that the phrases "insured named in the policy" and "named insured" can be meaningfully distinguished.

Finally, we note that interpreting "insured named in the policy" to mean "named insured" is consistent with the approach taken by other jurisdictions that have considered similar statutory language. For example, a Georgia court of appeals construed a statute allowing "any insured in the policy" to reject UM coverage as referring to a named insured. *See Miller v. State Farm Mut. Auto. Ins. Co.*, 155 Ga.App. 487, 271 S.E.2d 14, 15 (1980).

---

**5.** Article 5.06–3(a) contains the word "if" rather than "where." Tex. Ins.Code art. 5.06–3(a).

The court reasoned that to conclude otherwise "would be to ignore the statute's use of the words 'named in the policy' to qualify the word 'insured.'" *Id.* Florida courts of appeals have also construed the phrases to mean the same thing. *See, e.g., Whitten v. Progressive Cas. Ins. Co.,* 410 So.2d 501, 503 (Fla.1982) (construing statute allowing "any insured named in the policy" to reject coverage as providing that a named insured is the appropriate person to reject coverage), *overruled on other grounds by Fla. Patient's Comp. Fund v. Rowe,* 472 So.2d 1145, 1148 (Fla.1985); *Cont'l Ins. v. Roth,* 388 So.2d 617, 618 (Fla.Dist.Ct.App.1980) (interpreting phrase "any insured named in the policy" as synonymous with "any named insured"). Finally, Louisiana courts of appeals have held that the phrases are substantially synonymous. *See, e.g., Oncale v. Aetna Cas. & Sur. Co.,* 417 So.2d 471, 474 (La.Ct. App.1982), *cited with approval in Bullock v. Homestead Ins. Co.,* 697 So.2d 712, 715 (La.Ct.App.1997).

## C

█ Having determined that the phrase "insured named in the policy" is synonymous with "named insured" in this context, we must ascertain the meaning of "named insured" as used in articles 5.06–1(1) and 5.06–3(a) to determine whether Ms. Sanchez can be classified as such. Although the Code does not provide a general definition for "named insured" as used in articles 5.06–1(1) and 5.06–3(a), the circumstances surrounding the enactment of these statutes clarify the Legislature's intended meaning.

The Texas Department of Insurance (formerly the "State Board of Insurance") is charged with adopting standard policy forms to be used by motor vehicle insurers. *See* Tex. Ins.Code art. 5.06(1). With certain exceptions inapplicable to this case, insurers can only use a policy form adopted by the Texas Department of Insurance. *Id.* art. 5.06(2); *see also Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 550 (Tex.2003); *Urrutia v. Decker,* 992 S.W.2d 440, 443 (Tex.1999) (citing *Springfield v. Aetna Cas. & Sur. Ins. Co.,* 620 S.W.2d 557, 558 (Tex.1981)). The standard automobile insurance policy form in use when the Legislature enacted articles 5.06–1 and 5.06–3 was the Texas Family Automobile Policy ("TFAP").[6] Because the Legislature incorporated "the policy" in articles 5.06–1(1) and 5.06–3(a) by using the phrase "any insured named *in the policy*," we can safely assume that it considered the TFAP while drafting and enacting these statutes.

The TFAP explicitly defined "named insured" to include both the individual named on the declarations page "*and . . . [that individual's] spouse, if a resident of the same household.*" Texas Family Automobile Policy (1956) (available from the Texas Department of Insurance) (emphasis added). Thus, when the Legislature chose the phrase "named insured," it must have understood it to include the named insured's resident spouse, even if he or she was not specifically listed in the declarations page of the policy. Ms. Sanchez would therefore be a "named insured" and thus an "insured named in the policy" as contemplated by the Legislature when enacting articles 5.06–1(1) and 5.06–3(a).

---

**6.** In 1980, the State Board of Insurance replaced the TFAP with the Texas Personal Automobile Policy ("TPAP"). *See* Tex. Bd. Of Ins., Tex. Auto. Series Letter No. 529 (September 19, 1980) (available from the Texas Department of Insurance). The Board expressed that its intent behind the promulgation of the new standard policy was "to state more clearly the contract between the insured and insurer." *Id.*

This conclusion is consistent with the breadth of authority Ms. Sanchez had in these transactions. It is undisputed that she was able to purchase the policy for her husband and herself, and she was covered under the policy to the same extent as her husband. We find it difficult to conceive that the Legislature intended for a husband to be (i) covered under a policy obtained exclusively by his wife but admittedly for his benefit; (ii) entitled to recover from the insurer under the terms and policy limits set by the wife; yet, (iii) not bound with respect to one aspect of the policy—the rejection of UM and PIP coverages—because his wife was not authorized to reject coverages. *See Messerly v. State Farm Mut. Auto. Ins. Co.*, 277 Ill. App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 151 (1996) (employing similar logic). Under this reasoning, the wife would not even be entitled to reject UM and PIP coverages on her own behalf. Based on the circumstances surrounding the enactment of articles 5.06–1(1) and 5.06–3(a), we conclude that the Legislature did not intend a meaning of "named insured" that would lead to this result; instead, the Legislature intended "named insured" to include the spouse of the individual named on the declarations page of an insurance policy.

## IV

### Conclusion

We hold that the phrase "insured named in the policy" is synonymous with "named insured" in articles 5.06–1(1) and 5.06–3(a). In addition, because we conclude that Ms. Sanchez can be classified as a "named insured" and thus an "insured named in the policy," we hold that she had statutory authority to reject UM and PIP coverages in this case. We therefore reverse the court of appeals' judgment and render judgment for Old American. *See* Tex. R.App. P. 60.2(c).