IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0106
════════════
 
Nationwide Insurance 
Company, Petitioner,
 
v.
 
Mohamad Elchehimi, 
Individually and as Parent and Next Friend of Khaled Elchehimi and Lukman 
Elchehimi, Minors, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
 
            
Justice Wainwright 
delivered the opinion of the Court, joined by Chief Justice Jefferson, Justice Hecht, Justice 
Brister, Justice Green, Justice Johnson, and Justice Willett.
 
            
Justice O’Neill filed a 
dissenting opinion, joined by Justice 
Medina. 
            
This breach of contract suit stems from the denial of coverage by 
Nationwide Insurance Company on a claim arising from a collision between insured 
Mohamad Elchehimi’s vehicle and an axle-wheel assembly separated from an 
unidentified semi-trailer truck. The court of appeals reversed the trial court’s 
grant of summary judgment in favor of Nationwide. Because there was no actual 
physical contact between Elchehimi’s vehicle and the unidentified truck as 
required by statute to trigger the uninsured motorist coverage, we reverse the 
court of appeals’ judgment. 
            
On January 4, 2002, Mohamad Elchehimi’s station wagon collided with a 
drive axle and attached tandem wheels that had separated from an eighteen-wheel 
semi-trailer truck. The unidentified truck, which was being driven in the 
opposite direction on a divided highway, did not stop. Momentum carried the 
axle-wheel assembly across the dividing median where it struck Elchehimi’s 
vehicle, injuring the occupants and damaging the car. Elchehimi had purchased 
from Nationwide a standard Texas personal automobile insurance policy, 
including the optional statutorily defined unidentified motorist coverage. 
Nationwide denied Elchehimi’s claim for uninsured motorist benefits because the 
impact between Elchehimi’s vehicle and the axle-wheel assembly was not “actual 
physical contact” with an unknown “motor vehicle” as required by the terms of 
the policy and the Texas Insurance Code. 
            
Elchehimi sued Nationwide for breach of contract and breach of the duties 
of good faith and fair dealing. Nationwide moved for summary judgment, arguing 
that no actual physical contact occurred between Elchehimi’s vehicle and the 
unidentified truck. The trial court granted the motion. A divided court of 
appeals reversed, concluding that an issue of fact remained as to whether actual 
physical contact occurred. 183 S.W.3d 833, 839. Specifically, the court of 
appeals interpreted the Texas uninsured/underinsured motorist statute, then 
article 5.06-1(2)(d) of the Texas Insurance Code,[1] to require actual physical contact only 
with an “integral part” of an unidentified motor vehicle as a “result of an 
unbroken chain of events with a clearly definable beginning and ending, 
occurring in a continuous sequence” rather than actual physical contact with a 
motor vehicle. Id. at 838–39; see also Brooks v. 
State Farm Mut. Auto. Ins. Co., 2003-0389, p. 7 (La. App. 4 Cir. 9/24/03); 
855 So. 2d 419, 424 (citing references omitted). Nationwide petitioned this 
Court for review. 
            
The parties do not dispute the facts of the collision and agree that the 
following statutory provision, which provides the parameters of coverage for 
damage or injury caused by unidentified motorists in Texas, governs this 
dispute:
 
class=Section2> 
 
[F]or the 
insured to recover under the uninsured motorist coverage if the owner or 
operator of any motor vehicle that causes bodily injury or property damage to 
the insured is unknown, actual physical contact must have occurred 
between the motor vehicle owned or operated by the unknown person and the person 
or property of the insured.
 
 
 
class=Section3> 
Tex. Ins. Code § 1952.104(3) (emphasis 
added). The relevant policy language is consistent with the statute. To survive 
summary judgment, Elchehimi must raise a fact issue that his vehicle’s collision 
with the axle-wheel assembly qualified as “actual physical contact” with a 
“motor vehicle” or a legally recognized substitute for such contact.
            
Because there was actual physical contact between Elchehimi’s vehicle and 
the axle-wheel assembly, we examine whether the assembly is a motor vehicle 
under the Texas Insurance Code. Section 1952.104(3) does not define motor 
vehicle. However, the common usage of the term motor vehicle does not include a 
single axle attached to two wheels. See Slaughter v. Abilene State 
Sch., 561 S.W.2d 789, 791–92 (Tex. 1977). “Common usage has made the phrase 
‘motor vehicle’ a generic term for all classes of self-propelled vehicles not 
operating on stationary rails or tracks.” Id. at 792. In addition, other relevant 
statutory definitions aid our analysis. The Texas Insurance Code expressly 
incorporates the Texas Motor Vehicle Safety-Responsibility Act, chapter 601 of 
the Transportation Code. Tex. Ins. Code 
§ 1952.101(a). Chapter 601 sets minimum coverage amounts for vehicle 
liability insurance, and those amounts explicitly apply to uninsured motorist 
coverage. Tex. Transp. Code § 
601.072. Because Section 1952.104(3) and Chapter 601 address the same subject 
matter—motor vehicle insurance—the definition of motor vehicle in section 
601.002 of the Transportation Code is persuasive, if not controlling. Chapter 
601 defines a motor vehicle as “a self-propelled vehicle designed for use on a 
highway, a trailer or semitrailer designed for use with a self-propelled 
vehicle, or a vehicle propelled by electric power from overhead wires and not 
operated on rails.” Tex. Transp. Code 
§ 601.002(5).
            
A drive axle with two tandem wheels attached on one side lacks an engine 
or other means of propulsion. It is therefore neither a self-propelled vehicle 
nor a vehicle propelled by electric power from overhead wires. This wheel 
assemblage is not capable of carrying a load, nor can it be towed down a road by 
a self-propelled vehicle other than being dragged by or mounted underneath one, 
as Elchehimi’s expert witness testified. The axle-wheel assembly is thus not a 
trailer or semitrailer designed for use with a self-propelled vehicle. The 
axle-wheel assembly is not a motor vehicle under Chapter 601. Applying the 
common usage of the term and the definition in Chapter 601, we conclude that 
physical contact with a detached axle and tandem wheels is not actual physical 
contact with a motor vehicle under the unidentified motor vehicle provision. 

            
Elchehimi also argues that this collision involved a legally recognized 
substitute for the statute’s actual physical contact requirement. In Latham 
v. Mountain States Mutual Casualty Co., the court of appeals determined that 
the physical contact requirement could be satisfied through indirect contact 
where an unidentified vehicle first impacts an intermediary vehicle that in turn 
collides with an insured claimant. 482 S.W.2d 655, 657 (Tex. Civ. App.—Houston 
[1st Dist.] 1972, writ ref’d n.r.e.). The court of appeals held that “[w]here a 
Car A strikes Car B and propels it into Car C, there is physical contact between 
Car A and Car C” within the meaning of an automobile insurance policy that 
required physical contact with an unidentified vehicle. Id.
            
No Texas court, however, has ever relied on 
Latham to conclude that physical contact occurred where there was no “Car 
B.” Cf. 
Old Am. County Mut. Fire Ins. Co. v. 
Sanchez, 81 S.W.3d 452, 462 (Tex. App.—Austin 2002) (observing, but not 
holding, that Latham’s rule “survives in the fact situation . . . where 
car A hits car B which then hits car C” in a case where an uninsured motorist 
hit an insured’s vehicle, causing the vehicle to collapse on the insured), 
rev’d on other grounds, 149 S.W.3d 111 (Tex. 2004). Only two motor 
vehicles were involved in Elchehimi’s collision: the unidentified truck and 
Elchehimi’s station wagon. Because the axle-wheel assembly is not a motor 
vehicle, it cannot fill the role of an intermediary vehicle to provide indirect 
contact between the unidentified truck and Elchehimi’s vehicle. Latham is 
further distinguishable because the court in Latham was interpreting 
insurance policy language, not a statute, and the policy language did not have 
an actual physical contact requirement. Latham, 482 S.W.2d at 657. Five 
years after Latham, the Legislature added the actual physical contact 
requirement to the uninsured motorist statute. See Act of May 6, 1977, 
65th Leg., R.S., ch. 182, § 1, art. 5.06-1(2)(d), 1977 Tex. Gen. Laws 370, 371 
(repealed 2005).
            
No other substitute exists for the requirement of actual physical contact 
with the motor vehicle itself. Texas courts have uniformly rejected the 
contention that a collision with cargo and other objects falling from a car 
satisfies the requirement of actual physical contact with a motor vehicle. 
See, e.g., Tex. Farmers Ins. Co. v. Deville, 988 S.W.2d 331, 
333–34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that water pump 
falling from truck and striking insured was not actual physical contact with a 
motor vehicle); Republic Ins. Co. v. Stoker, 867 S.W.2d 74, 77–78 (Tex. 
App.—El Paso 1993) (holding that insured rear-ending another car that was trying 
to avoid furniture dropped on the highway by an unknown driver was not actual 
physical contact with an unknown vehicle), rev’d on other grounds, 903 
S.W.2d 338 (Tex. 1995); Williams v. Allstate Ins. Co, 849 S.W.2d 859, 861 
(Tex. App.—Beaumont 1993, no writ) (holding that collision between the 
claimant’s vehicle and a steel pipe dropped from an exiting truck was not actual 
physical contact with a motor vehicle). Another court of appeals considering the 
issue of contact with parts of the vehicle itself, rather than simply cargo, has 
concluded that such contact is also not enough to satisfy this strict 
requirement. See Smith v. Nationwide Mut. Ins. Co., No. 04-02-00646-CV, 
2003 WL 21391534, 2003 Tex. App. LEXIS 5056, at *6–8 (Tex. App.—San Antonio June 
18, 2003, pet. denied) (holding that collision between loading ramp that 
detached from trailer and insured’s vehicle was not actual physical contact with 
a motor vehicle). We agree that a collision with a separated piece of a motor 
vehicle, such as an axle-wheel assembly, is not actual physical contact with the 
motor vehicle as specifically required by the statute. 
            
The dissent argues we should follow the court of appeals’ suggestion that 
Texas adopt an integral part test to determine whether actual physical contact 
occurred. 183 S.W.3d at 835. We decline, however, to adopt an integral part test 
not present in the text of the statute and inconsistent with the relatively 
bright line established by the Legislature. Moreover, such a test would be 
practically unmanageable, requiring a case-by-case analysis to determine if a 
part was substantial enough to serve as a proxy for a motor vehicle. This would 
lead to a line-drawing conundrum for courts of appeals. The Legislature did not 
create an exception to the statute’s requirement of actual physical contact with 
a motor vehicle, and we decline to do so.
            
In search of support for such an integral part test, the dissent and the 
court of appeals look to other state jurisdictions and the interpretation of 
those states’ unidentified motorist statutes. Although interesting, we do not 
believe this analysis is necessary because the language of the Texas statute is 
not ambiguous. See Tex. Dep’t of Protective & Reg. Servs. v. Mega Child 
Care, Inc., 145 S.W.3d 170, 177 (Tex. 2004) (“If the statutory text is 
unambiguous, a court must adopt the interpretation supported by the statute’s 
plain language unless that interpretation would lead to absurd results.”) In 
addition, the dissent’s citations show there is no trend from which to glean a 
majority rule. Of the seven states the dissent identifies as having physical 
contact requirements in their unidentified motorist statutes and as having 
considered the integral part test, two have statutory language different than 
Texas,[2] four have adopted the test,[3] and one has rejected it.[4] Of the four states with cases adopting 
the integral part test, three have done so only at the intermediate appellate 
court level. At best, there is guidance from the highest courts of two states, 
New York and South Carolina, and they reach opposite conclusions on the 
issue.
            
The dissent agrees that the Texas uninsured motorist statute should be 
liberally construed to protect insureds “who are legally entitled to recover 
damages from owners or operators of uninsured or underinsured motor vehicles.” 
Stracener v. United Serv. Auto. Ass’n, 777 S.W.2d 378, 382 (Tex. 1989). 
Liberally construing a provision, however, does not permit divorcing its 
application from the words in the statute. The dissent states that our 
construction “does nothing to further the anti-fraud purpose behind the 
requirement of ‘physical contact’ with a ‘motor vehicle.’” To the contrary, 
creation of an integral part test would force courts to draw lines in each case 
along a continuum, to determine whether a particular part was large or important 
enough to be “integral,” whether the part was a piece of the vehicle or merely 
cargo, and whether the part was contemporaneously separated from the vehicle or 
had lain in the roadway long enough to become debris. All of these questions 
would open the door to uncertainty and potential fraudulent or fictitious 
claims, which the Legislature saw fit not to do. See Davis, 331 S.E.2d at 
354 (“The requirement of physical contact with the unknown vehicle, and not just 
with an unattached part thereof, is a viable manner of preventing fraudulent, 
fictitious claims.”). The Legislature drew a relatively bright line, and we 
decline to fuzz it up. Requiring contact with the motor vehicle honors the 
language enacted by the Legislature and enforces the legislative purposes of 
protecting insured motorists and preventing fraud.
            
The language of the statute compels our conclusion. The salient factor 
here is that the insured’s vehicle did not make actual physical contact with the 
unidentified vehicle. Whether the item that did make contact with the insured’s 
vehicle was initially a piece of the unidentified vehicle or was cargo that had 
fallen off is irrelevant—in either case the item is not a motor vehicle. For 
these reasons, and without hearing argument, we reverse the judgment of the 
court of appeals, render judgment for Nationwide, and order that Elchehimi take 
nothing. Tex. R. App. P. 
59.1.
 
 
            
________________________________________
            
J. Dale Wainwright
            
            
            
            
            
            
            
Justice
 
OPINION 
DELIVERED: March 28, 2008






[1] 
In 2005, the Legislature repealed Article 5.06-1(2)(d) as part of the 
codification of the Texas Insurance Code. The same language now appears in 
section 1952.104(3) of the Texas Insurance Code. Accordingly, the Court will 
retroactively apply Section 1952.104(3). See Subaru of Am., Inc. v. David 
McDavid Nissan, Inc., 84 S.W.3d 212, 219–20 (Tex. 2002) (retroactive 
application is constitutional where the change is remedial and procedural and 
does not affect a vested right). 

[2] 
See La. Rev. Stat. Ann. § 
22:680(1)(d)(i) (LEXIS through 2007 Sess.) (allowing testimony by a 
disinterested witness in place of actual physical contact); Wis. Stat. Ann. §§ 632.32(2)(a), 
.32(4)(a)(2)(b) (LEXIS through 2007 Sess.) (covering “hit-and-run” accidents 
with unidentified vehicles).

[3] 
See State Farm Fire & Cas. Co. v. Guest, 417 S.E.2d 419, 422 (Ga. Ct. 
App. 1992); Illinois Nat. Ins. Co. v. Palmer, 452 N.E.2d 707, 709 (Ill. 
App. Ct. 1983); Adams v. Mr. Zajac, 313 N.W.2d 347, 349 (Mich. Ct. App. 
1981); Allstate Ins. Co. v. Killakey, 580 N.E.2d 399, 401 (N.Y. 
1991).

[4] 
See Davis v. Doe, 331 S.E.2d 352, 353–54 (S.C. 
1985).