**Affirmed and Opinion filed September 18, 2014.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00954-CV

_____

## DONALD R. CAIN, Appellant

### V.

## PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, Appellee

**On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 1014844**

## O P I N I O N

This is an appeal from a summary judgment dismissing the plaintiff's claims against an insurer under an automobile insurance policy. The main issue is whether the insurance policy in effect at the time of the accident falls within the plain meaning of the term "renewal insurance policy" in sections 1952.101(c) and

1952.152(b) of the Texas Insurance Code. We conclude that it does and that the insurer was not required to provide uninsured or underinsured motorist coverage or personal injury protection coverage in this policy. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2003, Corliss Madison obtained an automobile insurance policy from appellee/defendant Progressive County Mutual Insurance Company. At that time, Madison rejected in writing uninsured or underinsured motorist coverage ("UIM Coverage") and personal injury protection coverage ("PIP Coverage"). Madison and Larry Bradford were named insureds under the policy. When the policy expired six months later, Madison entered into another insurance policy for the next six-month period. Madison then entered into seven more successive insurance policies every six months over the next four years.

Madison was involved in a vehicular accident on July 20, 2007 (the "Accident Date"), which allegedly resulted in her death in February 2012. Her husband, appellant/plaintiff Donald R. Cain, made a claim under the Progressive automobile insurance policy that was in effect when the accident occurred (hereinafter "Applicable Policy"). Cain sought UIM Coverage and PIP Coverage under the Applicable Policy. Progressive denied the claim.

Cain filed suit in the trial court below alleging that Progressive breached the insurance contract and violated the Texas Insurance Code. Progressive counterclaimed for declaratory judgment and other relief. Seeking summary judgment, Progressive filed a motion asserting the following: (1) Madison's written rejection in May 2003 of UIM Coverage and PIP Coverage (hereinafter "2003 Rejection") was valid and enforceable and therefore there is no UIM Coverage or PIP Coverage; (2) the policies Madison entered into with Progressive after the initial policy were renewal policies; (3) Madison's 2003 Rejection applied

2

to the Applicable Policy; (4) in construing Insurance Code sections 1952.101 and 1952.152, Texas courts do not follow the "material change" theory espoused by Cain; (5) even if Texas followed the "material change" theory it would not be triggered under the facts of this case; and (6) Cain was not a named insured under the Applicable Policy. Progressive sought summary judgment as to Cain's claims, but Progressive did not seek judgment as to any of its counterclaims.

The trial court granted Progressive's summary-judgment motion, and Cain appealed. During an abatement of this appeal, Progressive nonsuited its counterclaims against Cain, and therefore, the trial court's summary judgment is final and appealable.

## II. ISSUES AND ANALYSIS

### A. Did the trial court dismiss the plaintiff's claims based on a conclusion that the plaintiff lacked standing?

As a threshold matter, we address Cain's third issue in which he asserts that the trial court erred in dismissing his claims based on a conclusion that Cain lacked standing to assert these claims. Progressive did not assert lack of standing as a ground in its summary-judgment motion, and the trial court did not mention standing in its summary judgment. We conclude that the trial court did not dismiss for lack of standing. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Progressive may have argued that Cain lacked standing in its summary-judgment reply in the trial court and in its appellate brief, but that argument was not a summary-judgment ground upon which the trial court granted summary judgment. *See id.* Therefore, we need not address Cain's third issue as to whether the trial court erred in dismissing his claims for lack of standing.[1]

---

[1] In any event, this court has held that this type of argument—that a plaintiff lacks "standing" to sue on a contract because the plaintiff is not a party or third-party beneficiary of the contract—is

3

**B. Did the addition of a named insured under the policy constitute a material change that created a "new policy" requiring the insurer to obtain another written rejection of UIM Coverage and PIP Coverage?**

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

Under Texas Insurance Code section 1952.101,[2] the Texas Legislature mandates UIM Coverage in Texas automobile liability insurance policies, unless

a merits argument that, even if successful, would not deprive the courts of jurisdiction. Therefore, even if the trial court had granted summary judgment based on such an argument, we would not have to address it. *See Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[2] Unless otherwise specified, all statutory references in this opinion are to the Texas Insurance Code.

4

any insured named in the insurance policy rejects the coverage in writing. *See* Tex. Ins. Code Ann. § 1952.101 (West 2014). Similarly, under section 1952.152, the Texas Legislature mandates PIP Coverage in Texas automobile liability insurance policies, unless any insured named in the insurance policy rejects the coverage in writing. *See* Tex. Ins. Code Ann. § 1952.152 (West 2014). However, unless an insured named in the insurance policy requests in writing UIM Coverage or PIP Coverage, the insurer is not required to provide either coverage in or supplemental to a "renewal insurance policy" if an insured named in the insurance policy rejected UIM Coverage and PIP Coverage in connection with an insurance policy previously issued to the insured by the same insurer or by an affiliated insurer. *See* Tex. Ins. Code Ann. § 1952.101(c), 1952.152(b); *Old American County Mut. Fire Ins. Co. v. Sanchez*, 149 S.W.3d 111, 114–18 (Tex. 2004).

The statutes requiring UIM Coverage and PIP Coverage under certain circumstances are remedial in nature. *See Old American County Mut. Fire Ins. Co.*, 149 S.W.3d at 115. The Supreme Court of Texas has recognized that, because of their remedial purposes, these statutes should be interpreted liberally to give effect to the public policy that led to their enactment. *See id.* Nevertheless, because courts presume that every word of a statute has been included or excluded for a reason, as a matter of judicial restraint, courts will not insert requirements that are not provided by law.[3] *See id.*

---

[3] Several sister courts of appeals have stated that courts should strictly construe the written-rejection exception to the general rule requiring that UIM Coverage or PIP Coverage be provided. *See, e.g., Howard v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 218 (Tex. App.—Dallas 1996, writ denied) (stating that "[b]ecause of its remedial purpose, and as a corollary to the courts' liberal interpretation effecting UM/UIM coverage, the written rejection exception to [the predecessor statute's] general rule should be strictly construed to protect the insured"). Because the Supreme Court of Texas did not follow this rule of strict construction in holding that the written-rejection exception applied in *Old American County Mutual Fire Ins. Co. v. Sanchez*,

5

Madison, an insured named in the insurance policy, rejected UIM Coverage and PIP Coverage in writing when Progressive issued the first automobile liability policy to her in May 2003. Cain does not dispute the 2003 Rejection or argue that it is invalid or unenforceable. Nor does Cain allege that any insured named in the insurance policy requested UIM Coverage or PIP Coverage in writing. Instead, Cain disputes Progressive's argument that the Applicable Policy was a "renewal insurance policy." Madison is an insured named in the Applicable Policy, and she rejected UIM Coverage and PIP Coverage in connection with an insurance policy issued to her by Progressive before the issuance of the Applicable Policy. Therefore, if the Applicable Policy was a renewal insurance policy, then Progressive was not required to provide UIM Coverage or PIP Coverage, and the trial court did not err in granting summary judgment. *See* Tex. Ins. Code Ann. § 1952.101(c), 1952.152(b); *Payne v. Mid-Century Ins. Co. of Am.,* No. 03-02-00641-CV, 2003 WL 22024458, at *2–4 (Tex. App.—Austin Aug. 29, 2003, no pet.) (mem. op.); *Poteet v. State and County Mutual Fire Ins. Co.,*7 S.W.3d 679, 681–83 (Tex. App.—Eastland 1999, no pet.); *Berry v. Texas Farm Bureau Mutual Ins. Co.*, 782 S.W.2d 246, 247–49 (Tex. App.—Waco 1989, writ denied).

The summary-judgment evidence reflects that the Applicable Policy was the eighth policy in an unbroken chain of successive policies issued by Progressive after the expiration of the first six-month policy issued in May 2003. In each of these policies, Madison and Bradford were listed as named insureds. At one point the address of the insureds was changed. At various times, a vehicle was added or removed from coverage under this chain of insurance policies. In December 2005, Dennis A. Coleman, Jr., Madison's son, was added to the existing policy as a

we do not apply this rule in the case under review. *See* 149 S.W.3d at 114–18.

driver and household resident. We presume for the purposes of our analysis that Coleman was added as a named insured at Madison's request.[4] This change resulted in a significant increase in the insurance premium, and one month later Coleman was removed from the policy.

Progressive notified Madison on April 27, 2007, that "[i]nformation received during the servicing of the 04/22/2007 claim indicates that Dennis A. Coleman, Jr. was either driving at the time of the loss, is a member of [Madison's] household[,] or has access to your vehicles."[5] As a result, Progressive added Coleman to the existing policy as a driver and household resident. We presume for the purposes of our analysis that Progressive added Coleman to the existing policy on April 27, 2007, as a named insured without any request by Madison or Bradford.[6]

Coverage began on May 5, 2007, under the Applicable Policy, the eighth successive policy after the expiration of the first policy issued in May 2003. Both the "Renewal Declarations Page" and the "[R]evised Renewal Declarations Page," issued on different dates in April 2007, reflect that UIM Coverage and PIP Coverage had been rejected. The summary-judgment evidence shows that Coleman continued to be listed as a driver and household resident. We presume for the purposes of our analysis that Coleman was a named insured on the Applicable Policy throughout its existence, including on the Accident Date.

Cain argues that Progressive's addition of Coleman as a named insured to

---

[4] Documents in the record list Coleman as a driver and household resident but arguably indicate he was not a named insured. We presume that he was a named insured.

[5] This claim involves an accident prior to the July 20, 2007, accident that is the basis of Cain's claims.

[6] This is an allegation that Cain makes. Documents in the record list Coleman as a driver and household resident but arguably indicate he was not a named insured. We presume that he was a named insured and that Progressive added him without any request by Madison or Bradford.

7

the existing policy on April 27, 2007, without any request by Madison or Bradford, created a "new" policy and prevented the policy then in force, as well as the Applicable Policy, from being renewal insurance policies within the meaning of sections 1952.101(c) and 1952.152(b). The parties have not cited and research has not revealed any precedent from the Supreme Court of Texas or this court on the meaning of "renewal insurance policy" as this term is used in these statutes. Nonetheless, several sister courts of appeals have concluded that "renewal insurance policy," as used in one of the predecessors to these statutes, included each new successive insurance policy in an unbroken chain of coverage going back to the initial policy as to which UIM Coverage and PIP Coverage was rejected. *See Payne,* 2003 WL 22024458, at \*3–4; *Poteet*, 7 S.W.3d at 682–83; *Berry*, 782 S.W.2d at 248–49. Likewise, we conclude that "renewal insurance policy," as used in sections 1952.101(c) and 1952.152(b), includes each new successive insurance policy in an unbroken chain of coverage going back to the initial policy as to which UIM Coverage and PIP Coverage was rejected by an insured named in the insurance policy. *See Payne,* 2003 WL 22024458, at \*3–4; *Poteet*, 7 S.W.3d at 682–83; *Berry*, 782 S.W.2d at 248–49. The addition and removal of vehicles from the policies, the addition and removal of Coleman as a named insured in December 2005 and January 2006, and Progressive's addition of Coleman as a named insured on April 27, 2007, do not preclude the Applicable Policy from being a renewal insurance policy under sections 1952.101(c) and 1952.152(b). *See Payne,* 2003 WL 22024458, at \*3–4 (holding that policy was a renewal insurance policy under statutory predecessor to section 1952.152(b), even though two of the three named insureds on the original policy had been removed from the subsequent policy); *Poteet*, 7 S.W.3d at 682–83 (holding that policy was a renewal insurance policy under statutory predecessor to section 1952.101(c), even though the only named insured on the policy died and coverage was extended to the deceased's surviving

spouse).

Cain argues that the addition of Coleman as a named insured on April 27, 2007, created a new policy that was not a renewal policy because Coleman could not request UIM Coverage or PIP Coverage. Presuming that Coleman was added as a named insured, he had the ability to request in writing UIM Coverage or PIP Coverage. *See* Tex. Ins. Code Ann. § 1952.101(c), 1952.152(b). Cain does not argue or present any evidence that Coleman did so. Rather, the issue is whether the addition of Coleman as a named insured would prevent the policy and the succeeding Applicable Policy from being a renewal insurance policy so that Progressive could rely on the prior written rejection of these coverages by an insured named in the insurance policy.

Cain asserts that there was a lapse in coverage under the policy from the date in January 2006, when Coleman was removed from the then-existing policy and April 27, 2007, when Coleman was added back as a named insured. But, there was continuous coverage of the vehicles listed in the policies, and Madison and Bradford were listed as named insureds from the 2003 Rejection through the Accident Date. The removal of Colman as a named insured from January 2006 through April 27, 2007 might mean that Coleman's driving of the covered vehicles was not used as a basis for calculating the insurance premium. Nonetheless, during this period the policies that were in effect provided coverage with respect to an accident arising out of the use of a covered vehicle by a relative of Madison or with respect to an accident arising out of the use of a covered vehicle with the express or implied permission of Madison or Bradford. That Coleman was not a named insured from January 2006 through April 27, 2007, does not change the Applicable Policy's character as a renewal insurance policy.

Cain asserts that the addition of Coleman as a named insured on April 27,

9

2007, significantly increased the premium, materially changed the policy, and created a new policy that was not a renewal policy. In support of this argument, Cain cites authorities applying the law of other states. Even presuming that the law of these other states is not materially different from Texas law, the reasoning in these authorities conflicts with the precedent from our sister courts of appeals in Texas, and we do not find these out-of-state authorities to be persuasive.

The summary-judgment evidence conclusively proves that the Applicable Policy falls within the unambiguous language of the term "renewal insurance policy" under sections 1952.101(c) and 1952.152(b). Therefore, Progressive was not required to provide either UIM Coverage or PIP Coverage, and the trial court did not err in granting summary judgment. *See* Tex. Ins. Code Ann. §§ 1952.101(c), 1952.152(b). Accordingly, we overrule Cain's first and second issues.[7]

## III. CONCLUSION

Madison, an insured named in the insurance policy, rejected UIM Coverage and PIP Coverage in writing in May 2003, when Progressive issued the first automobile liability policy. The summary-judgment evidence conclusively proves that under the unambiguous statutory language, the Applicable Policy is a renewal insurance policy as that term is used in sections 1952.101(c) and 1952.152(b). Therefore, Progressive was not required to provide UIM Coverage or PIP Coverage, and the trial court did not err in granting summary judgment.

---

[7] The 2003 Rejection contained broad language that arguably might constitute a rejection in advance of such coverages as to future insurance policies that are substitute, amended, altered, modified, or replacement policies, even if they are not renewal policies. We need not and do not address whether the trial court's judgment may be affirmed based on an argument that, even if the Applicable Policy is not a renewal insurance policy, Madison rejected in May 2003 UIM Coverage and PIP Coverage as to the Applicable Policy.

10

The trial court's judgment is affirmed.


                                    /s/    Kem Thompson Frost
                                           Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison.